## Koss, Appellant, vs. A. Geo. Schulz Company, Respondent.

*February 6—March 6, 1928.*

*New trial: Impeachment of verdicts by affidavits of jurors: Change of answer by jury after poll by judge: New trial by supreme court: When granted: If justice has not been done.*

1. Verdicts of juries, solemnly rendered, particularly after specific inquiry of the members of the jury by the trial court, should not be set aside because the legal consequences which follow the rendition of the verdict are not what the jury anticipated they would be. p. 251.

2. In a personal injury action, where the jury returned a verdict for plaintiff, and on inquiry of the jury by the court, in the absence of the parties, as to whether plaintiff's failure to exercise ordinary care contributed to his injury, the foreman stated that a majority of the jury were of the opinion that he did not exercise ordinary care, and the jury retired and changed the answer to the question as to whether he failed to exercise ordinary care from "No" to "Yes," the trial court properly entered judgment for defendant on the verdict. p. 251.

3. The question whether plaintiff, injured when defendant's truck suddenly backed into the truck on which he was riding, was contributorily negligent in riding on the running board, is *held* for the jury. p. 252.

4. Where plaintiff did not move for a new trial, but stood on his rights under a special verdict, the trial court did not err in failing to grant a new trial on its own motion; but where the record presented is such as to raise a grave doubt whether justice has been done even though established rules of law have been correctly applied, a new trial will be granted as provided in sec. 251.09, Stats. pp. 252, 253.

APPEAL from a judgment of the circuit court for Milwaukee county: CHARLES L. AARONS, Circuit Judge. *Reversed.*

Action begun on the 1st day of January, 1924. Judgment entered January 20, 1927. Personal injuries. Automobile accident. The plaintiff on November 1, 1923, was on the running board of the Waukesha Roxo Company

truck, which was proceeding at the rate of about ten or twelve miles an hour in a northerly direction on Milwaukee street. No portion of the plaintiff's body was extending or protruding beyond the body of the Waukesha Roxo Company truck. He was standing near the cab, protected by the projection of the truck upon which were piled large empty water bottles. While in such position on the truck and near a point opposite the garage of the Phœnix Knitting Company, defendant's truck, parked on the right-hand side of the street, was suddenly backed into the truck upon which the plaintiff was riding, striking the plaintiff and severely injuring him.

The jury returned the following verdict:

"(1) At and immediately prior to the time of the collision, did the defendant's driver, Leonard Kemski, back the defendant's truck towards truck of the Waukesha Roxo? A. Yes.

"(2) If you answer the first question 'Yes,' then answer this question: Did Leonard Kemski, the driver of the defendant, in so doing fail to exercise ordinary care? A. Yes.

"(3) If you answer the second question 'Yes,' then answer this question: Was such failure the proximate cause of the collision? A. Yes.

"(4) If you answer the first question 'Yes,' then answer this question: Did Bruno Piasecki, the helper on the defendant's truck, fail to exercise ordinary care with respect to the lookout kept by him just prior to the collision? A. Yes.

"(5) If you answer the fourth question 'Yes,' then answer this question: Was such failure the proximate cause of the collision? A. Yes.

"(6) Did the plaintiff fail to exercise ordinary care for his own safety which proximately contributed to produce his injuries? A. No.

"(7) If the court should be of the opinion that the plaintiff is entitled to recover, in what sum do you assess his damages:

"(a) For medical and hospital expenses, expenses for care and treatment; X-rays and appliance and ambulance charge. A. (by court). $1,123.05.

"(b) For loss of time and earnings and for pain, suffering, and discomfort. $7,051."

Upon the return of the jury with the verdict, counsel for both parties were intentionally absent from the court room. The verdict by its form did not indicate whether it was unanimous and, under a rule relating to a verdict by five sixths of the jury, the court endeavored to ascertain whether the verdict was reached by ten jurors, and the following proceedings were had:

"The Court: Members of the jury, is this and was this your verdict? Jurors: Yes, sir.

"The Court: Let me ask this jury: are the answers to the questions on this verdict unanimous, or did any one dissent? You need not give me the name of any one if they did dissent. Was it unanimous or otherwise? The Foreman: Most of them was unanimous but there were some where one or two voted otherwise. I didn't see any place on there and I didn't write it down.

"The Court: You don't need to write it down. I will ask you this: Question No. 1 is as to whether the defendant's driver, Leonard Kemski, backed the defendant's truck toward the truck of the Waukesha Roxo Company. The answer is 'Yes;' did all agree on that or not? The Foreman: I think there was one dissenting.

"The Court: No. 2 is whether that was a failure to exercise ordinary care; the answer is 'Yes.' Did any one disagree on that also? The Foreman: I think one disagreed on that.

"The Court: Was it the same one? The Foreman: Oh yes, they all agreed on that one.

"The Court: Only one disagreed on number one so far. The Foreman: Yes.

"The Court: Now on No. 3 was: that the proximate cause and so forth; the answer is 'Yes.' Did all agree on that? The Foreman: All agreed on that.

"The Court: No. 4 is in regard to the helper, whether the helper failed to exercise ordinary care with respect to the lookout. The answer is 'Yes.' Did all agree on that? The Foreman: Yes, I think they did.

"The Court: No. 5: whether that was proximate cause,

and the answer is 'Yes.' All agreed on that? The Foreman: All agreed on that.

"The Court: No. 6: did the plaintiff fail to exercise ordinary care and so forth. The answer is 'No, he did not fail;' is that your answer to that? The Foreman: I think we misunderstood that. There was one on that that voted that he did exercise ordinary care and eleven that he did not exercise ordinary care.

"The Court: Then you meant to answer that 'Yes,' that he failed to exercise ordinary care? The Foreman: Yes.

"The Court: Then I will hand the verdict to. you and you can correct that according to the fact that you find. It says: Did the plaintiff fail to exercise ordinary care? The Foreman: Yes, we misunderstood.

"The Court: I will step out and the rest of us will step out and you don't need to go down stairs again. .You can deliberate further right here and you will call us when you are ready. (Thereupon the court and the reporters and the two bailiffs retired from the room. No others present outside of the jury.) At 5:25 p. m. jury returned into court.

"The Court: Now, members of the jury, you have during this time made a correction, I understand, to the answer to question No. 6? The Foreman: Yes.

"The Court: Please hand your verdict to the sheriff. (Verdict handed to the sheriff.)

"The Court: Members of the jury: the verdict as I have now received it contains the answers to the verdict as heretofore presented with the exception of question No. 6, and that reads as follows: Did the plaintiff fail to exercise ordinary care for his own safety which proximately contributed to produce his injuries? The answer to that is 'Yes;' is that correct? Jurors: Yes, sir.

"The Court: Is that the answer of all the members of the jury? Jurors: Yes.

"The Court: All twelve? Jurors: Eleven to one. The Foreman: That is right. Eleven to one.

"The Court: Is the one that dissented the same one that wanted to answer 'No' to question No. 1? The Foreman: No, sir.

"The Court: It is a different one. You understand the answer now—'Yes'—to question No. 6, that means that the plaintiff was negligent? The Foreman: Yes, sir.

"The Court: That is the answer you intend to give, that is, eleven of the jury? The Foreman: Yes.

"The Court: And the one that wanted to answer 'No' to this question, that the plaintiff is not negligent, is not the same one who differed with the eleven on question No. 1? It is a different one? The Foreman: Not the same one.

"The Court: On the damages, question (b), did all agree on that figure, $7,051? Jurors: Yes. The Foreman: That was figured as an average.

"The Court: Whichever way you figured, that is the amount the jury finds as a correct amount? The Foreman: Yes; they all agreed on that figure.

"The Court: Then I understand, Mr. Foreman and members of the jury, at least the same ten members of the jury agreed on all these answers as they are now here answered? The Foreman: Yes. Jurors: Yes.

"The Court: That only one differed on the first answer and another one differed with the sixth answer? Jurors: Yes.

"The Court: Very well, the verdict will be received and filed."

The answer to the sixth question was changed from "No" to "Yes" in the manner indicated. The verdict was returned on November 23, 1926. On December 1st the plaintiff moved for judgment on the verdict as originally returned, moved to change the answer to the sixth question from "Yes" as it then appeared upon the verdict to "No," for the reasons set out in the motion, and supported the motion by an affidavit signed by eleven of the jurors dated November 26, 1926, as follows:

"That he or she was a member of the jury in the above entitled action; that his or her verdict in the case was and is that plaintiff did not fail to exercise ordinary care which proximately contributed to his injuries. The recording of the verdict otherwise is an error, and this affidavit is made as a joint affidavit with the other jurors for the purpose of indicating the error and for the purpose of causing the said verdict to be corrected to conform to finding agreed to by each of the other jurors and your affiant, and which was

and is your affiant's only finding in the case with respect to plaintiff's negligence; that is, your affiant's in so far as it relates to question No. 6 of the verdict was that plaintiff, *Stanley Koss,* did not fail to exercise ordinary care which proximately contributed to produce his injury."

The defendant made certain motions relating to the change of answer to questions 1, 2, and 4, and in the alternative for judgment on the verdict. It appears that in addition to the joint affidavit each of the eleven jurors made an individual affidavit, and while the individual affidavits are stated in different terms they all embody substantially the same statement of facts to the effect that the verdict first arrived at contained the answer "No" to question 6; that the answer was fully understood by the affiant and other jurors; that there was only one dissent; that the foreman was mistaken in the statement which he made to the court in saying that eleven voted that he did not exercise ordinary care and one that he did, as the situation was exactly the reverse; that the change was made in the answer to question number 6 from "No" to "Yes" in order to give effect to the finding made by the jury. Each of the affidavits contains statements substantially to the following effect:

"Whatever the answer, I emphatically state that the ten other jurors and I agree that plaintiff was not guilty of negligence which proximately contributed to his injuries; that we never changed from that finding and our verdict should be recorded so as to find that plaintiff was not guilty of negligence which proximately contributed to his injury."

Avery A. Cross, the foreman of the jury, made an affidavit in part as follows:

"That after all persons had retired from the court room for that purpose the answer to question No. 6 as to 'plaintiff's failure to exercise ordinary care,' etc. was changed from 'No' to 'Yes;' that immediately thereafter, while the jury was still alone in the court room, the change from 'No' to 'Yes' as made was exhibited by your affiant to all members

of the jury, and that said change was assented to by ten members of .the jury and your affiant; that the court was then notified and the corrected answer and verdict was then presented to the judge in open court; that during the jury's deliberations in the court room, as above referred to, they were alone at all times and that no person entered the court room.

"That your affiant, as well as at least ten other members of the jury, desired the plaintiff to recover damages, but were not informed as to the effect the answer would have upon the plaintiff's right to recover; that thereafter your affiant was informed by Mr. I. B. Padway as to the effect of the answer to question No. 6 upon plaintiff's right to recover; that your affiant, along with ten other members of the jury, thereafter signed an affidavit framed by Mr. Padway for the reason as explained above, that it was the desire of at least ten members of the jury and your affiant that plaintiff should recover damages."

The trial court gave full consideration to the motions of both parties, denied plaintiff's motions, and granted the defendant's motion for a judgment on the verdict as returned, from which judgment the plaintiff appeals.

*I. B. Padway,* attorney, and *Joseph A. Padway,* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* and *Henry J. Bendinger,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

ROSENBERRY, J. The matters involved in this appeal were exhaustively considered in *Wolfgram v. Schoepke,* 123 Wis. 19, 100 N. W. 1054; and we are not disposed to relax in any degree whatever the rules there laid down, nor is it necessary to repeat here what was said there. If there was no other disclosure with reference to the verdict in this case except such as is contained in the affidavits of the eleven jurors, the case would fall within the rule of *Wolf-*

*gram v. Schoepke, supra.* There were other proceedings had in this case before the jury separated and before the jurors had an opportunity to learn from others the legal consequences of the verdict which they had rendered. In disposing of the issues raised by plaintiff's motions after verdict, the trial court said:

"But assuming that the jurors' affidavits are admissible as evidence and that they may be considered by the court, it then becomes the duty of the court to pass upon all the evidence before the court, including, of course, the proceedings which took place in open court when the original verdict was returned and also at the time when the corrected verdict was returned.

"Upon an examination of all of the affidavits presented upon behalf of the plaintiff, the affidavit of the foreman of the jury, presented on behalf of the defendant, the transcript of the record of the proceedings had in open court when the jury returned its original verdict, and the further proceedings when the jury returned with its corrected verdict, and also having in mind a clear recollection of the discussion which took place in the court's presence, between court and jurors, I am well satisfied that there were no indications whatever of any confusion on the part of the foreman or other members of the jury, and that the verdict as corrected was the actual and true verdict of the jury. The court distinctly remembers not only that the foreman reported the corrected verdict, but that the jurors, in chorus, affirmed the answer 'Yes' to question No. 6 to be correct. It seems to the court that evidence thus taken in open court before the jury has separated is of far greater value than evidence produced by affidavits weeks later, after the jurors have separated and after they have been informed of the effect of their answers.

"It is apparent that in securing the affidavits there was an absence of that high degree of caution which should have been exercised. Affidavits based upon interviews with jurors after their separation carry little weight unless accompanied by the most careful safeguards."

The affidavits of the jurors, taken in connection with what occurred in the court room upon the coming in of the ver-

dict, presented a situation where it was well within the province of the trial court to find whether or not the verdict as originally brought into the court room was the verdict of the jury as it was intended to be, or whether the jury intended to find plaintiff guilty of want of ordinary care. The court quite clearly and definitely had in mind the applicable principles of law. While it may appear that the rights of parties may sometimes be sacrificed to legal forms and procedure, some attention must be given to the larger question of the administration of justice. As has been said:

"Let it once be established that verdicts solemnly made, and publicly returned into court, can be publicly attacked and set aside on the testimony of those who took part in their publication, and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate their finding. Jurors would be harassed and beset by the defeated party, in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside the verdict. If evidence thus secured could be used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation, to the destruction of frankness and freedom of discussion and conference." 1 Hyatt, Trials, § 835; *McDonald v. Pless,* 238 U. S. 264, 35 Sup. Ct. 783; *Holub v. Cootware,* 169 Wis. 176, 170 N. W. 939.

It is considered that the trial court correctly applied the proper rule of law to the situation presented to it by the motions made in the court below. Considerations of public policy of the most weighty and convincing character require that verdicts of juries solemnly rendered, particularly as in this case after specific inquiry of the members of the jury by the trial court, should not be overturned or set aside because the legal consequences which follow the rendition of the verdict are not what the jury anticipated they would be. The affidavits as drawn quite clearly indicate a mistake, but the inquiry made by the judge in open court indicates quite the contrary.

The trial court was of the opinion that the plaintiff was guilty of contributory negligence as a matter of law. In this view we cannot concur. Inasmuch as there is to be a new trial we shall not state or discuss the facts, but are clearly of the view that a jury issue was presented with reference to that matter.

Error is assigned here because the trial court did not in the exercise of its discretion and upon its own volition grant a new trial. Plaintiff's attorneys did not move for a new trial, preferring to stand upon their rights under the verdict. If the plaintiff had sought a new trial in the court below it is conceivable at least that the court might have granted it. Neither side asked for a new trial. It cannot be said that the trial court committed error in failing to grant it upon its own motion. 20 Ruling Case Law, p. 225, § 11, and cases cited. See *Sullivan v. M., St. P. & S. S. M. R. Co.* 167 Wis. 518, 167 N. W. 311.

The situation presented by the record in this case is such as leaves in the mind of this court a grave doubt as to whether or not justice has been done, even though established rules of law may have been properly and correctly applied. It may well be that this court shares the responsibility for the confusion of mind which existed on the part of the jurors in this case. While contributory negligence may be a failure on the part of one to exercise ordinary care, it is customarily thought of by persons not trained in the law in the affirmative rather than in the negative form in which it is ordinarily stated and a form of statement which has been approved many times by this court. There is a growing feeling as indicated in *Berrafato v. Exner,* 194 Wis. 149, 216 N. W. 165, that some of the definitions in our law of negligence are involved and confusing to persons not accustomed to deal with them. It is clear that in this case there was some confusion of mind on the part of the jurors.

It is considered that this is a case in which a new trial should be granted as provided by sec. 251.09, Stats.

*By the Court.*—The judgment appealed from is reversed and cause remanded for a new trial; no costs to be taxed by either party, the appellant to pay the clerk's fees in this court.