GRAFF, Appellant, vs. HARTFORD ACCIDENT & INDEMNITY COMPANY and another, Respondents.

*October 5—November 8, 1950.*

*George M. St. Peter* of Fond du Lac, for the appellant.
*Ervin A. Weinke* of Fond du Lac, for the respondents.

GEHL, J. This appeal presents only the question whether the trial court abused its discretion in granting a new trial on the question of damages.

With respect to the manner in which the accident occurred it suffices to say that an automobile parked at the side of a road and occupied by plaintiff was struck from the rear by a truck being driven by an employee of defendant, Oscar Mayer Packing Company.

The nature of defendants' contention requires us to set forth in some detail the disability and the extent of the injuries plaintiff claims she suffered. At the time of the trial she was fifty-five years of age. For about twenty years she had been a widow and had raised four children. Prior to the accident she had been in good health. During the early years of her widowhood she maintained herself and children by keeping roomers and boarders. During World War II for a time she worked in a factory where she earned about $150 per month. 'During the years 1946, 1947, and 1948 she was engaged in various homes as housekeeper and practical nurse earning six dollars per day at an average of about five days per week. This work and her employment for a short time in a canning factory provided her sole means of support. It was her plan to resume the work as a practical nurse at about the time of the accident.

The impact of the vehicles threw her from her seat in the automobile to the bottom of the car. Immediately she felt a pain in her back. The pain which continued to the time of the trial in November, 1949, was such as to keep her from sleep without the use of sedatives. On the day after the accident she consulted Dr. Twohig who prescribed and administered diathermy treatments which gave her little relief except when being so treated. She was unable to lift heavy objects

which disability still existed at the time of trial. Since the accident she has been unable, because of her back ·condition, to do any work except to take care of her own household. Her income has therefore been cut off.

Sec. 270.49 (1), (2), Stats., provides:

"(1) The trial judge may entertain a motion to be made on his minutes, to set aside a verdict and grant a new trial . . . for excessive or inadequate damages or in the interest of justice; . . .

"(2) Every order granting a new trial shall specify the grounds therefor. . . . No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein. . . ."

The trial judge in the order granting a new trial stated as his reasons therefor, (1) with respect to damages, that the verdict is perverse and reflects bias and prejudice on the part of the jury, (2) that the evidence fails to establish a fair standard as a basis for compensation of plaintiff's wage loss and the medical proof is so indefinite and uncertain with respect to the plaintiff's disability that any allowance required resort to speculation and conjecture on the part of the court and jury, and (3) that a new trial as to damages is in the interest of justice.

These reasons were sufficient to warrant the court's action if the record discloses a sufficient basis for them. *Kies v. Hopper,* 247 Wis. 208, 19 N. W. (2d) 167.

The doctors agree that there was a pre-existing condition in plaintiff's back—arthritis. They agree, also, that the accident aggravated that condition and brought on the pain which followed the accident. They agree that she sustained no injury except that which appeared in her lower back region. There is no claim of fracture. No objective symptoms were found except a few bruises, affected muscles, and re-

stricted motion of the back. Dr. Twohig stated, in answer to a question whether he had an opinion to a reasonable certainty whether plaintiff will recover from her present condition "so as to be comparable to what she was before the accident," that he does not believe she will recover entirely from it, and that she might get worse. As to the need for surgery, he said that he "thinks she has a very good chance to have surgery done," that at the time of the trial surgery had not been recommended. His attention was called to the fact that Dr. McCormick, his associate, had reported that plaintiff "has normal motions of her back for a woman of her age," and testified that if Dr. McCormick had said so it is correct; Dr. McCormick's statement was put in the record upon his cross-examination. Dr. Twohig could not say definitely that plaintiff's condition would be relieved at any definite time in the future, but said that he would look for some permanent disability.

Dr. Twohig found as objective symptoms a few bruises, affected muscles in her back, and a restricted motion of the back, which, with the pain of which she complained, he attributed to the accident. He diagnosed her injury as a low back strain. He testified that the diathermy treatment which he had prescribed did not alleviate the pain and in July, 1949, referred her to Dr. McCormick, an orthopedic surgeon. It is Dr. Twohig's opinion that plaintiff's back condition will never be as good as it was before the accident, that it might get worse and that he would look for some permanent disability; that she might require major surgery which would cost from $1,000 to $1,500 and that following surgery she might still have some trouble in her back.

Dr. McCormick examined her in July, 1949, and found a low back ache based on strain and degenerative arthritis, and that the accident which she suffered aggravated an existing condition in her back and brought on her pain. He pre-

scribed conservative treatment consisting of wearing a suitable corset, a board in her bed, and a form of exercise. He was asked as to the necessity for surgery and answered that to determine the need for it he would have to continue his treatment and examination. If surgery were necessary it would cost over $800. He testified that at the time of the trial she was still suffering pain in her back.

He testified further that plaintiff had not improved since he first saw her in July, 1949, that if the conservative treatment she had received does not relieve the pain "you must consider surgery," which would confine plaintiff for four months, and that a normal back would not follow.

Called by the defendant, Dr. Gavin testified that he examined plaintiff just before the trial and found a pre-existing arthritic condition and testified that if the pain in her back commenced at the time of the accident it was evidently caused by the accident. He would not recommend surgery.

All of what the learned trial judge says in his memorandum decision points definitely and clearly to the fact that in granting a new trial he was influenced solely by his opinion that the award of damages was excessive. We consider that there is credible evidence to support the jury's award. Plaintiff suffers a condition which disables her. The doctors agree in effect that the condition will continue and that for some time she will be unable to perform services outside her household to provide for her maintenance. She may require expensive surgery. The pain will continue. At the time of the trial she was still taking sedatives to enable her to sleep. It is true, as defendants contend, that some of the medical testimony was given in response to questions not technically in proper form; the answers were given, however, without objection. None of this testimony is shown to be incredible. The record does not disclose a sufficient basis for the reasons given by the court in granting a new trial.

The trial judge observes that "there is no evidence of how much time was devoted to such service [as a practical nurse], or by whom she was so employed, so that the court has difficulty in concluding that that was her fixed occupation. . . . A fair analysis of her testimony leaves the court in a position where it cannot honestly and justly say that the plaintiff's earning power was diminished, as a result of this accident, by a definite amount monthly or annually." There was no reason for his doubt. It appears to us to be appropriate to call attention to the fact that he had no such doubt during the trial. In the course of plaintiff's testimony her counsel sought to fortify her claim that she had earned six dollars per day for an average of five days per week as a practical nurse and housekeeper by calling upon her to state the places at which she had worked. The following took place between the court and her counsel:

"The Court: Well, is that important, Mr. St. Peter? After all, she has testified that she averaged about five days a week, and isn't that really it?

"Mr. St. Peter: Yes, Your Honor, I agree with you. I just want the jury to have no mistake but what she did and can earn that amount.

"The Court: Well, she says she can, and there's no issue been raised about it, and the evidence is in to that effect."

The court stated that the interest of justice requires a new trial, and that the *allowances* reflect bias and prejudice on the part of the jury. If it might be said that the award is excessive, still it would not of itself indicate bias or prejudice on the part of the jury, nor would it warrant the granting of a new trial in the interest of justice. *Schmutzler v. Brandenberg,* 240 Wis. 6, 1 N. W. (2d) 775. There is nothing else in the record which suggests that bias and prejudice influenced the jury.

The court proceeded upon an erroneous view of the law.

"Ordinarily, the granting of a motion for a new trial lies largely within the discretion of the trial court, which will not be disturbed unless abused. The rule, however, does not apply where it is clear that the trial court proceeded upon an erroneous view of the law." *Goelz v. Knoblauch,* 242 Wis. 186, 194, 7 N. W. (2d) 420.

*By the Court.*—Order reversed with directions to enter judgment upon the verdict.