FORD MOTOR CREDIT COMPANY, Appellant, v. AMODT, Respondent.

*December 2, 1965—January 4, 1966.*

444

For the appellant there were briefs and oral argument by *John Frampton* of Chippewa Falls.

For the respondent there was a brief and oral argument by *Frank E. Huettner* of Cadott.

GORDON, J. For all our reverence for the jury system, we must not be blind to the fact that a jury is but 12 human beings possessed of all the foibles and flaws of mortal men. Shakespeare touched on this in Measure for Measure (Act 2, Scene 1):

> "The jury, passing on the prisoner's life,
> May in the sworn twelve have a thief or two
> Guiltier than him they try."

Abraham Lincoln in a letter dated June 12, 1863, to Erastus Corning wrote:

> "A jury too frequently has at least one member more ready to hang the panel than to hang the traitor."

Wisconsin has heretofore preserved a major exception to the general rule which bars jurors from invalidating

their own verdict. This exception has permitted jurors to show that their verdict was mistakenly recorded.

The principal case which established the exception in Wisconsin is *Wolfgram v. Schoepke* (1904), 123 Wis. 19, 26, 100 N. W. 1054, where the court stated that jurors could impeach their own verdict by

". . . showing that the words used in conveying it to the court, or enrolling it on the records, by mistake of the person uttering or writing them, fail to express the conclusion reached by all the jurymen."

This exception was acknowledged in *State v. Biller* (1952), 262 Wis. 472, 476, 55 N. W. (2d) 414, and also in the recent case of *Kink v. Combs* (1965), 28 Wis. (2d) 65, 135 N. W. (2d) 789. In the latter case, an attempt was made to attack a verdict by presenting an affidavit of a juror to the effect that he had failed to resist because of "sheer fatigue." The court stated, at page 78:

"This is an attempt of a juror to impeach his own verdict, and is not countenanced by this court. Only in limited cases, *e.g.*, if a verdict is reported erroneously by clerical error, will jurors be heard to complain that the verdict is in error. *Brophy v. Milwaukee Electric Railway & Transport Co.* (1947), 251 Wis. 558, 30 N. W. (2d) 76. *"Olson v. Williams* (1955), 270 Wis. 57, 70 N. W. (2d) 10, and a series of Wisconsin cases that precedes it point out the sound reasons of public policy behind this rule. Suffice it to say that if a showing that a juror was fatigued when he arrived at a verdict would result in setting it aside, the finality that we now confidently expect from a jury verdict would be at an end, and the jurors themselves would be harassed endlessly by the loser in his efforts to set aside their decision."

As suggested above, there is a rational and compelling public policy which bars jurors from debasing their own verdict. This rule forecloses jurors from impugning their findings by asserting their own misconduct. Two recent cases reaffirming this long-established general rule are *Ken-Crete Products Co. v. State Highway*

*Comm.* (1964), 24 Wis. (2d) 355, 363, 129 N. W. (2d) 130, and *Field v. Vinograd* (1960), 10 Wis. (2d) 500, 511, 103 N. W. (2d) 671.

The policy basis for the rule was asserted persuasively in *Brophy v. Milwaukee Electric Railway & Transport Co.* (1947), 251 Wis. 558, 566, 30 N. W. (2d) 76:

"There is sound public policy behind this general rule prohibiting impeachment of their verdict by the jury. The formality and dignity of the court proceedings are intended to provide as appropriate a surrounding as possible for the achievement of justice. The jury is kept apart from influences which might prejudice its decision. If jurors, after being discharged and after mingling with their friends who may have expressed approval or disapproval of the jury's verdict, are to be allowed to impeach that verdict, the unbiased evaluation of the evidence which the solemn court proceedings are intended to facilitate, will have ceased to control decisions. In talking after the trial to those who did not like the verdict, a juror might be inclined to express a wish that it had gone the other way. He may honestly think that if he had it to do over again he would vote differently. He may admit that he would have voted differently if he had known what the legal effect of the verdict would be. It is likely that there should be such reactions in some cases. But such subsequent reactions are not to be allowed to impeach the verdict. If they were allowed, the verdict would cease to be a decisive thing, putting an end to litigation; the jurors would become subjects of post-trial chicanery, improper persuasion, and possibly bribery. In any event, objective discovery of the truth would be hampered, not promoted."

An equally vigorous statement of the policy underlying this salutary rule is contained in *Koss v. A. Geo. Schulz Co.* (1928), 195 Wis. 243, 251, 218 N. W. 175:

" 'Let it once be established that verdicts solemnly made, and publicly returned into court, can be publicly attacked and set aside on the testimony of those who took part in their publication, and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate their find-

ing. Jurors would be harassed and beset by the defeated party, in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside the verdict. If evidence thus secured could be used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation, to the destruction of frankness and freedom of discussion and conference.' "

Whenever a court rejects a past precedent, there will be those who will decry the change. The late Roscoe Pound, in his Interpretations of Legal History (1923), said, "Law must be stable and yet it cannot stand still." Upon careful reflection, we have concluded that the continuation of the *Wolfgram* limitation will cause more injustice than it will cure.

We believe that the public-policy reasons which prompted the court to adopt the general rule foreclosing jurors from stultifying their own verdict applies with equal validity to the claim that an answer has been improperly recorded. We now expressly overrule *Wolfgram v. Schoepke* and disavow the exception to the general rule which was made in that case. Once the jury has returned its verdict into court and has been discharged, its members may not be permitted to initiate a challenge to such verdict, whether it be based on their own misconduct or a claimed erroneous recordation.

With *Wolfgram* overruled, there is even greater significance to the proceedings which occur in the courtroom at the time the verdict is returned. As a result of our present ruling, counsel must recognize that belated efforts to attack the recordation will be unavailing and therefore, if any doubt whatsoever exists on this, a polling of the jury should be held. If, as in the case at bar, an attorney is not present when the jury returns its verdict, it will ordinarily be interpreted as a waiver of his right to challenge the accuracy of the inscription.

The situation in which a juror attempts to initiate an attack upon the verdict must be distinguished from

the case in which an impropriety was observed by a third person and a report thereof was made to the trial court. Thus, in *State v. Sawyer* (1953), 263 Wis. 218, 225, 56 N. W. (2d) 811, after the verdict was returned, the court clerk discovered that he had inadvertently delivered the prosecutor's argument notes to the jury along with the exhibits when the jury retired to commence its deliberations. When the clerk informed the court of this event, it was appropriate for the court to have conducted an inquiry concerning the presence of the prosecutor's notes in the jury room.

Similarly, in a case such as *Cullen v. State* (1965), 26 Wis. (2d) 652, 660, 133 N. W. (2d) 284, the trial court may inquire into an alleged impropriety involving the jury. In the *Cullen Case,* it appeared that a woman who served as a jury matron was the wife of a prosecution witness. See also *State v. Cotter* (1952), 262 Wis. 168, 54 N. W. (2d) 43; *Surma v. State* (1952), 260 Wis. 510, 51 N. W. (2d) 47; *La Valley v. State* (1925), 188 Wis. 68, 205 N. W. 412.

Our ruling terminates the existence of the *Wolfgram* exception to the general exclusionary rule. We recognize, however, that in some situations (such as *Sawyer* and *Cullen*) jurors may properly be subject to interrogation by the court to determine if an irregularity occurred; however, trial courts should limit such inquiries to those cases in which the court is persuaded (1) that substantial personal awareness of the alleged impropriety is within the direct and independent knowledge of one who did not serve as a member of the jury, (2) that such knowledge was not derived by such person from a juror after the jury's discharge, and (3) that the challenge to the integrity of the verdict originated from such person rather than from a juror. Thus, jurors may sometimes be required to confirm or deny someone else's attack upon

their verdict, but they themselves may never embark on a course which will impeach their verdict.

In addition to basing his order for a new trial upon the foreman's failure to record the verdict accurately, the trial court also relied upon the fact that two documents which had not been received into evidence were examined by the jurors during their deliberations. There can be no doubt that the jurors were legally foreclosed from disclosing this phase of their deliberations.

In view of our determination that there is no exception as to recordation of the verdict, it follows that the order for a new trial in the interests of justice was based upon an error of law. Under such circumstances, an order for a new trial in the interests of justice may be reversed. *Felkl v. Classified Risk Ins. Corp.* (1964), 24 Wis. (2d) 595, 600, 129 N. W. (2d) 222; *Holtz v. Fogarty* (1955), 270 Wis. 647, 651, 652, 72 N. W. (2d) 411; *Graff v. Hartford Accident & Indemnity Co.* (1950), 258 Wis. 22, 28, 44 N. W. (2d) 565. Upon the remand, the trial court should enter judgment based upon the jury's written verdict.

*By the Court.*—Order reversed, and cause remanded with directions.