[No. 2810–3.   Division Three.   June 14, 1979.]

VERNON PAUL KITT, *Respondent,* v. YAKIMA COUNTY, *Appellant.*

*Jeffrey C. Sullivan, Prosecuting Attorney, James E. Davis, Deputy, Gavin, Robinson, Kendrick, Redman & Mays,* and *John Gavin,* for appellant.

*Brooks & Larson* and *Terry A. Brooks,* for respondent.

ROE, J.—The Stein–Zier intersection is in rural Yakima County. Neither road is an arterial. The southerly portions of the intersection are obstructed by an orchard.

Plaintiff Kitt was the disfavored driver proceeding north on Stein Road. He collided in the intersection with a car driven by Stanton who was proceeding west on Zier Road. Kitt sued the defendant county on the sole basis that the county was negligent in the method of erecting signs ("signing") at the intersection of the two roads.

Posted on all four corners of the Stein–Zier intersection is a crossroad sign, a diamond–shaped sign with a bold black "plus" mark in its center. The trial court ruled as a matter of law that the county was negligent in the manner of signing, and submitted only the issues of proximate cause and contributory negligence to the jury. The jury found the county's negligence was a proximate cause of the accident and that the total amount of Kitt's damages was $78,100. The jury also found that Kitt's own negligence contributed to the damage and the percentage of contributory fault was 33 1/3 percent. Kitt therefore received judgment for $52,061.46.

The defendant alleges that the court erred in ruling that the county was negligent as a matter of law. In its motion for a new trial, the defendant also urged that the jury's verdict was erroneous: according to one juror's affidavit,

plaintiff Kitt was not to receive $52,000 (two–thirds of his damages), but rather only one–third of his damages. It is unfortunate that the interrogatories sent to the jury were not in the form frequently used in comparative negligence cases where the jurors indicate the amount of plaintiff's negligence in percentage form, the amount of other negligence in percentage form, with 100 percent prenoted as the total amount of causation. This form of interrogatory would have avoided any question in interpreting the verdict and it seems to us the better practice.

██ Pursuant to the mandate of RCW 36.86.040, the State Highway Commission adopted a Manual on Uniform Traffic Control Devices for Streets and Highways (M.U.T.C.D.). As modified in 1972, the manual is law in Washington and establishes the standard of care or duty owed by the county.

Section 2C–10 of the manual refers to the "Cross Road Sign" and states:

> The Cross Road sign is *intended* for use on a *through highway* to indicate the presence of an obscured cross-road intersection.

(Italics ours.)

Kitt testified that he saw the sign but thought it was to be used only where the intersecting roads have stop signs; hence, he proceeded through the intersection. He also testified, in the words of the manual, that he thought the signs were properly used on a through highway, which is defined in Rule 8A–2 of M.U.T.C.D. as:

> A highway or portion thereof on which vehicular traffic is given preferential right–of–way, and at the entrances to which vehicular traffic from intersecting highways is required by law to yield the right–of–way to vehicles on such through highway in obedience to a stop sign, yield sign, or other official traffic control device, when such signs or devices are erected as provided by law.

Because the signs were placed on Zier Road, which is not a through highway, the court ruled that the county was negligent by not conforming to the manual which is the law.

The court also observed that section 2A–4 of the manual provides that, "Each standard sign shall be displayed only for the specific purpose prescribed for it in this Manual."

Section 1A–4 defines the phrase "is intended for use":

Is INTENDED FOR USE—An advisory condition. Where the words "is intended for use" are used, it is considered to be of advisable usage, recommended but not mandatory.

Defendant argues that the trial court interpreted "intended for use" as equivalent to "prescribed" or "mandatory," and that the court interpreted section 2C–10 to mean that use of the crossroad sign is ·mandatory and is limited to a through highway if there is an obscured intersection.

Defendant relies on section 1A–3 entitled "Engineering Study Required," which states:

The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation.

Qualified engineers are needed to exercise the engineering judgment inherent in the selection of traffic control devices,·. . .

Attention is also called to section 2C–1, "Warning Signs," which states that there may be some conditions, including intersections, to which the driver can be alerted by means of warning signs; further,

The determination of the sign or signs to be erected shall be on the basis of an engineering study using the following sections as guidelines.

Defendant called three expert witnesses, county engineers, who testified that on the basis of their engineering studies and judgment, the crossroad sign was a warning sign, that it could be placed at locations other than a through highway, that it was suitable for this intersection,

and that these crossroad signs were found on all four corners of numerous intersections in Yakima County.

Defendant also argues that the court erred in failing to give its proposed instructions which would allow the jury to determine whether the signing was negligent. If the court was correct in holding the county negligent as a matter of law, then the instructions given on this aspect of the case were not erroneous.

Under section 2C–10, use of crossroad signs on through highways is advisory only, and not mandatory. Although the manual provides that a crossroad sign is "intended for use on a through highway," it does *not* state that it may be used *solely* on a through highway. This implies that the sign can be used elsewhere.

According to section 2C–1, warning signs are advisable in intersections and the determination of the type of sign or signs to be erected is made on the basis of an engineering study. Thus, although the manual provides standards for design and application of devices, it is not a substitute for engineering judgment. Recognizing that engineers are needed to exercise judgment in the selection of traffic control devices, the manual places responsibility on engineers to determine which signs to erect. Therefore, whether the engineers were or were not negligent in signing a particular intersection is a question for the jury and is not a question of law. Accordingly, the court erred in finding the defendant negligent as a matter of law.

This conclusion is supported by several other factors. The Driver's Guide, also admitted into evidence, refers to the crossroad sign and indicates that it is used at "a four–way intersection." There is no mention of "through highway" or right–of–way. Although the manual is law and the Driver's Guide is not, the guide is the basis for most drivers' understanding about the meaning of highway signs. The State Department of Motor Vehicles furnishes the

guide to those who apply for a driver's license, so we may assume that it is read and relied on by Washington drivers.

Further, the manual itself indicates that the crossroad sign is not restricted to placement on through highways:

2A–4 Standardization of Application

. . .

Uniformity of application is as important as standardization with respect to design and placement. *Identical conditions should always be marked with the same type of sign, irrespective of where those particular conditions occur.*

. . .

It is recognized that urban traffic conditions differ from rural, and in many instances signs must be applied and located differently.

(Italics ours.)

■ The next issue is whether Juror Baldridge's affidavit may be considered to impeach the verdict. It may not. In *Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651 (1962), the court set aside a verdict and stated on page 841, quoting from 8 J. Wigmore, *Evidence* § 2349, at 681 (J. McNaughton rev. ed. 1961):

". . . it is today universally agreed that on a motion to set aside a verdict and grant a new trial the verdict cannot be affected, either favorably or unfavorably, by the circumstances:

"that one or more jurors *misunderstood* the judge's *instruction*;

This "misconduct" inheres in the verdict. Whether Juror Baldridge misunderstood the instruction on how to determine the percentage of Kitt's negligence, or misunderstood the effect of it is without substantial difference. The affidavit stated that the jury intended Kitt to receive only one–third of the total amount of his damages. If this be true, the jury misunderstood the trial court's instructions, and under *Gardner v. Malone, supra,* the jury misconduct inheres in the verdict.

The judgment is reversed and remanded for a new trial.

MUNSON and McINTURFF, JJ., concur.

Reconsideration denied July 3, 1979.

Review granted by Supreme Court October 12, 1979.