Mary Ann CYR

v.

Bernard MICHAUD

v.

LOCKWOOD GRADERS, INC.

Supreme Judicial Court of Maine.

Argued Nov. 16, 1982.

Decided Jan. 11, 1983.

**1378**

Harding Law Offices, Alan F. Harding (orally), Floyd L. Harding, Presque Isle, for plaintiff.

Stevens, Engels & Bishop, Frank H. Bishop, Sr. (orally), Presque Isle, for Bernard Michaud.

Solman, Page & Hunter, P.A., Richard Solman (orally), Caribou, for Lockwood Graders.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

CARTER, Justice.

Following a jury trial on a claim for damages resulting from an accident which occurred when Mary Ann Cyr fell while descending from a potato harvester owned by Bernard Michaud and manufactured and sold by Lockwood Graders, Inc. (hereinafter Lockwood), Michaud appeals a judgment entered against him. He objects to (1) the denial of a motion for a directed verdict and for judgment notwithstanding the verdict, (2) the denial of a request to poll the jury after discharge, (3) the refusal to admit affidavits of jurors as proof of a basis for correction of a mistake in the recording of a verdict, (4) the dismissal before trial of plaintiff's claims against Lockwood, and (5) the partial dismissal, at the close of all the evidence, of Michaud's claims of indemnification and contribution against Lockwood.

The plaintiff, Mary Ann Cyr, filed a complaint in negligence against the defendant, Bernard Michaud. As a third-party plaintiff, Michaud, filed a third-party complaint seeking indemnification and contribution from Lockwood for any judgment entered against Michaud. The plaintiff subsequently asserted claims including counts of negligence, breach of both express and implied warranties, and strict liability against Lockwood. In a pretrial order, the court dismissed the plaintiff's claims against defendant Lockwood for lack of privity.

At trial, the following facts were presented. The plaintiff, Mary Ann Cyr, was employed by Michaud as a worker on a potato harvester. During the early morning of September 19, 1977, the plaintiff ascended a ladder to her work position on the harvester. The plaintiff's job was to throw potatoes from a conveyor carrying both rocks and potatoes to a conveyor carrying potatoes. At approximately 9:00 a.m., the conveyor at which the plaintiff was working broke down. The defendant, who was driving the potato harvester, stopped the machine.

The defendant had previously instructed his workers that during a breakdown the male harvester workers were to help him repair the conveyor and that the female workers were to remove the potato vines which were stuck in the back of the harvester. Complying with these instructions, two male workers ascended the ladder to reach the broken-down conveyor near the plaintiff. The defendant went under the machine to assist them in repairing the conveyor. Although it was necessary for the plaintiff to descend from the machine in order to clear the back of the harvester, as she had been previously instructed, the two male workers blocked the plaintiff's access to the ladder. Because the plaintiff was then and still is a large person, there was no room for her to pass. The plaintiff therefore descended from her position by stepping onto a conveyor located directly in back of her work area. On several previous occasions, the defendant had requested that the plaintiff jump on this back conveyor to dislodge some rocks. On the day in question, the plaintiff stepped from this rear conveyor to the side elevator. She then walked down the side elevator. When the plaintiff reached the lower end of the side elevator, she stepped with her left leg from the machine to the ground. The machine at this point was two or three feet off the ground. When her left foot reached the ground, she twisted her foot and she fell incurring injury.

At the end of the plaintiff's case, Michaud moved for a directed verdict which was denied. After Michaud had submitted his case, Lockwood moved for a directed verdict on the indemnification and contribution claims, but the court denied the mo-

tion. Lockwood renewed its directed verdict at the end of all the evidence. Partially granting the motion, the court directed a verdict in favor of Lockwood on the claims for indemnification and contribution based on breach of warranty and strict liability. The court found that the statute of limitations on those claims accrued on the date of sale of the machine. The court reasoned that because the harvester was bought in 1966 and the suit was commenced in 1979, the statute of limitations for the breach of warranty and strict liability claims had run, thereby barring Michaud's suit against Lockwood. The court, however, denied the requested motion for a directed verdict on Michaud's negligence claim against Lockwood.

After charging the jury, the trial justice explained the verdict form to the jurors. During the explanation, the justice read question five: "[t]o what dollar and cents amounts do you deem it just and equitable having regard to the plaintiff, Mary Ann Cyr's fault, to reduce the total damages." The defendant did not object to this question. After deliberating for several hours, the jury returned a verdict for the plaintiff. As requested by question four of the verdict form, the jury determined that the plaintiff's total damages were $100,000.00. Proceeding to question five, the jury awarded the plaintiff $80,000.00.

In chambers after the return of the verdict and the discharge of the jury, the defendant requested the court to poll the jury on the ground that question five was ambiguous. According to the defendant, the jury could have interpreted question five as requesting the amount of the reduction of the damages rather than the amount of the final award. Denying the motion, the court held that the failure to object to interrogatory number five at the appropriate time constituted a waiver of any objection. In addition, the justice concluded that the question was not ambiguous.

Four days after the completion of the trial, another in-chambers conference was held. At that time, the court announced that after the trial an uninvolved attorney asked a juror what the jury had intended to award the plaintiff. According to this attorney, the juror said that the jury had intended to award the plaintiff $20,000.00 rather than $80,000.00. The court stated that apparently the jurors had interpreted question five as requesting the amount of the reduction from the total damages rather than the plaintiff's final award. Based upon this new evidence, the court considered whether to reimpanel the jury. The court held that by failing to object to the verdict form at the appropriate time, the defendant waived any issue as to the ambiguity of question five. In addition, the court concluded that to reimpanel the jury would violate the sanctity and the thought process of the jury.

After the justice rendered his decision, the defendant informed the court that he would seek affidavits from all of the jurors. The plaintiff moved to enjoin unlawful contact with the jurors. The court, however, denied the plaintiff's motions. After seeking the affidavits from all of the jurors, the defendant attached four of the affidavits to five of the post-judgment motions that he filed. These motions included (1) a motion to poll the jury, (2) a motion to alter or amend a judgment under M.R.Civ.P. 59(e), (3) a motion to correct a clerical mistake pursuant to M.R.Civ.P. 60(a), (4) a motion for a new trial under M.R.Civ.P. 59(a), and (5) a motion for relief from judgment under M.R.Civ.P. 60(b). Denying all these motions, the court ruled, in part, that the verdict of a jury can not be impeached by affidavits from jurors. The defendant subsequently filed an appeal. The defendant had also filed a motion for remittitur pursuant to M.R.Civ.P. 60(a). The defendant, however, does not object to the denial of this motion.

I.

■ The defendant first argues that the justice erred in denying the defendant's motions for a directed verdict and for judgment notwithstanding the verdict. When

viewing the denial of motions for a directed verdict and for judgment notwithstanding the verdict, we must determine whether the verdict can be sustained by any reasonable view of the evidence, including all justifiable inferences to be drawn therefrom, taken in the light most favorable to the plaintiff, the party in whose favor the verdict was rendered. *Grant v. Warren Brothers Co.,* 405 A.2d 213, 216 (Me.1979) (citing *Zamore v. Whitten,* 395 A.2d 435, 439 (Me.1978)). The judgment in favor of the plaintiff must stand unless clearly erroneous. M.R.Civ.P. 50(c); (*see Ogden v. Libby,* 159 Me. 485, 485–86, 195 A.2d 414, 414–15 (1963)).

■ The jury could have found the following facts. There were no signs positioned along the route the plaintiff used to descend from the harvester warning the plaintiff to use the ladder in descending from the harvester. In addition, the defendant had never issued any oral instructions requiring employees to use the ladder to descend from the machine. The defendant had previously requested the plaintiff to jump on the rear conveyor. By issuing such encouragement to the plaintiff's presence on the rear conveyor, the defendant should have anticipated that the plaintiff would step not only onto the rear conveyor but also onto other conveyors and elevators on the machine. It was, therefore, reasonably foreseeable that the plaintiff would step from the back conveyor to the side elevator to descend from the machine especially when her access to the ladder was blocked. Consequently, the jury could have found the defendant negligent for failure to warn of the dangers of descending the machine by this route and in actively encouraging a dangerous practice. The jury could have found that the breach of any one, or all, of these duties was the proximate cause of the plaintiff's injuries. The verdict for the plaintiff as to the issue of the existence of liability was not clearly erroneous.

## II.

■ The defendant also claims that because question five on the special verdict form was ambiguous, the justice erred in denying the defendant's post-trial request to reassemble and to poll the jury members. The court took no active role in the preparation of the form. All the parties had agreed on the proper form of the special interrogatories for submission to the jury. The defendant took an active role in drafting the jury interrogatories. The defendant must be presumed to have approved of the form of question five as submitted. Due to such acquiescence, the defendant can not now be heard to complain about the text of the interrogatory. The defendant has not preserved for review the issue whether interrogatory number five is ambiguous. *See Dongo v. Banks,* 448 A.2d 885, 892 (Me.1982) (because parties agreed to question jury on comparative fault in action based upon breach of warranty, plaintiff stipulated away argument that comparative fault not relevant to theory based on contract).

Not only was the defendant given ample opportunity to redraft the verdict form before its submission to the jury, but he was also given the opportunity to object to the verdict form before the dismissal of the jury. After the judge explained the verdict form to the jury, the defendant did not object to the clarity of question five. The defendant objected to the question only after the jury *had been dismissed* from the case. If the defendant had objected before the dismissal of the jury, the justice could conceivably have taken action to correct any ambiguity in the verdict form. This requirement of a timely objection is necessary for the efficient administration of justice. *See Wescott v. Vickerson,* 284 A.2d 902, 904 (Me.1971) (involving failure to object to instructions at appropriate time). Consequently, the defendant's objection to the verdict form was not properly preserved for appellate review.

■ Even assuming that the defendant's objection was properly preserved for appellate review, we find that question five was not ambiguous. Question four stated "[w]hat is plaintiff Mary Ann Cyr's total

damages?" Question five read *"[t]o what dollar and cents amount do you deem it just and equitable having regard to the plaintiff, Mary Ann Cyr's fault, to reduce her total damage?"* (Emphasis added.) The defendant asserted that question five was ambiguous because the jury could have interpreted the question as requesting either the amount of the reduction of damages or the amount of the final award. By using the language *"[t]o what dollar and cents amount do you deem it just and equitable . . . to reduce her total damage"* (emphasis added), it is clear that the question requests the amount of the final award. If the question requested the amount of the reduction, it would have read *"by what amount do you deem it just to reduce her total damage."* The language of the question also states "[t]o what amount do you deem it just and equitable *having regard to the plaintiff's fault. . . ."* (Emphasis added.) This language indicates that the jury, after considering the plaintiff's fault, was to reduce the total damages by the amount of damage attributable to the plaintiff's fault. The question makes it clear that the jury was to subtract the amount of the reduction from the total damages to calculate the plaintiff's final award, the answer to question five. Consequently, the justice did not err in concluding that the question was unambiguous.

Finally, the justice justifiably denied the request to poll the jury because the defendant had failed to support his request with any evidence, other than his conclusion that the question was ambiguous. At that time, the defendant had not secured any affidavits from the jurors. *See Thomas v. Wilson,* 356 A.2d 737, 740 (Me.1976) (per curiam) (appellant presented no evidence of

outside influence upon jurors). Moreover, there is no authority in Maine for permitting a polling of the jury after the dismissal of the jury. The polling of a jury requires each juror to declare his verdict before it is recorded. In this case, the request to poll the jury was made after the verdict was recorded and the jury was dismissed. The defendant's request to poll the jury was made too late. The justice properly denied the request.

### III.

The defendant argues that by refusing to consider the affidavits of the jurors attached to several of the defendant's post-judgment motions, the justice improperly denied the defendant's post-judgment motions alleging that the jury had misinterpreted question five of the verdict form. This alleged misinterpretation of the verdict form was brought to the attention of the court and counsel by an uninvolved third person who after the trial had asked one of the jurors what the jury intended to award the plaintiff. According to this third person, the juror told him that the jury intended to award the plaintiff $20,000.00. Using the affidavits from the jurors to support his motions,[1] the defendant asserts that the jury believed that question five requested the amount of reduction from the total damages. Accordingly, he says the jury intended to reduce $100,000.00 by $80,000.00 and to award the plaintiff $20,000.00. To conform to that rationale of the verdict, the defendant now seeks to correct the verdict on the basis of the affidavits from the jurors.

There is currently a split of authority on the question whether affidavits of jurors

---

1. All of the affidavits stated:

   I, [name of juror], served on a jury in Aroostook County Superior Court in Caribou, Maine, in the case of Mary Ann Cyr, Plaintiff vs. Bernard Michaud, Defendant vs. Lockwood Graders, Inc., Third-Party Defendant.

   On February 4, 1982, we reached a verdict for Plaintiff, Mary Ann Cyr against Bernard Michaud and for Lockwood Graders, Inc. against Bernard Michaud.

   Our verdict was that Plaintiff, Mary Ann Cyr, recover the net sum of $20,000. against Bernard Michaud.

   Dated: February 11, 1982

   ---
   Signature
   Address

are admissible to prove that the jury misinterpreted the jury form. Some courts admit affidavits from jurors to correct a mistake in the recording of the verdict. *See P.M. Lattner Manufacturing Co. v. Higgins,* 196 Iowa 920, 195 N.W. 746 (1923) (affidavits of jurors used to correct inadvertent mistake by foreman in recording verdict which was noticed only after discharge of jury); *Dunham v. Veterans of Foreign Wars Club of Muskegon, Post 446,* 104 Mich. App. 541, 305 N.W.2d 260 (1981) (affidavits used to correct mistake in recording verdict which appeared on face of verdict form but which was noticed after discharge of jury); *see also Glennon v. Fisher,* 51 Idaho 732, 10 P.2d 294 (1932) (affidavits stated that jury mistakenly returned $125 verdict against all defendants rather than $125 verdict against each defendant); *Moulton v. Staats,* 83 Utah 197, 27 P.2d 455 (1933) (affidavits permitted because jury failed to make deductions as sought in defendant's counterclaim in violation of instruction); *cf. Rose v. Thau,* 45 A.D.2d 182, 357 N.Y.S.2d 201 (1974) (affidavits used to change jury's mistake in recording percentage of negligence attributable to each party which was noticed by counsel before dismissal).

These courts initially recognize the general rule that the affidavits of jurors can not be used to impeach a verdict.[2] *E.g., Glennon,* 51 Idaho at 736, 10 P.2d at 295; *Dunham,* 104 Mich.App. at 543, 305 N.W.2d at 262. Distinguishing a correction of a mistake in the recording of a verdict from an impeachment of a verdict, these courts reason that the general rule prohibiting the admission of juror affidavits is not applicable to a case involving the correction of a verdict. *E.g., Rose,* 45 A.D.2d at 185, 357 N.Y.S.2d at 203; *Moulton,* 83 Utah at 206,

27 P.2d at 459. These courts further reason that it would be a miscarriage of justice to permit a verdict which was not the intent of the jury. *See e.g., Glennon,* 51 Idaho at 736, 10 P.2d at 295 (court's duty to make correction to reflect true verdict); *P.M. Lattner,* 196 Iowa at 921, 195 N.W. at 747 (verdict rendered not true verdict).

█ In contrast, other courts prohibit the admission of affidavits to correct a mistake in recording a verdict. *See Chalmers v. City of Chicago,* 88 Ill.2d 532, 59 Ill.Dec. 76, 431 N.E.2d 361 (1982) (affidavits inadmissible to show that jury intended to award compensatory rather than punitive damages which counsel discovered after trial while talking with juror); *Shears v. Metropolitan Transit Authority,* 324 Mass. 358, 86 N.E.2d 437 (1949) (after discharge of jury affidavits from jurors inadmissible to prove that jury intended to award plaintiff $7,000 against all defendants rather than $3,500 against each defendant); *Biebelle v. Norero,* 85 N.M. 182, 510 P.2d 506 (1973) (court held affidavits inadmissible to establish that jury form did not represent intention of jury); *Downum v. Muskogee Stockyards & Livestock Auction,* 565 P.2d 368 (Okl. 1977) (affidavits inadmissible to show jury misunderstood jury form since counsel failed to object to jury form before discharge of jury); *Roberts v. Kettelle,* 116 R.I. 283, 356 A.2d 207 (1976) (affidavits inadmissible to prove that jury misunderstood instructions even though objection made before discharge); *Kitt v. Yakima County,* 23 Wash.App. 548, 596 P.2d 314 (1979) (although jury intended to find that plaintiff receive one-third damages rather than that plaintiff one-third negligent, affidavits submitted after discharge inadmissi-

---

2. M.R.Evid. 606(b) embodies this general rule:

Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except

that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received.

*See Patterson v. Rossignol,* 245 A.2d 852 (1968).

ble because jury misconduct inheres in verdict), *rev'd on other grounds,* 93 Wash.2d 670, 611 P.2d 1234 (1980); *Ford Motor Credit Co. v. Amodt,* 29 Wis.2d 441, 139 N.W.2d 6 (1966) (affidavits inadmissible to correct erroneous reporting of answer in jury form which was discovered after discharge of jury); *see generally* 5 J. Wigmore, *Wigmore on Evidence* § 2349 at 681, 681–91 (J. McNaughton rev. ed. 1961) (discussing jurors misunderstandings, intentions as immaterial). These courts reason that to admit affidavits of jurors would permit every dissatisfied litigant to question a verdict by inquiry into the thought processes of the individual jurors and thereby undermine the finality of both the verdict and the judgment. Moreover, to admit the affidavits would be conducive to harassment and annoyance of jurors by unsuccessful litigants. We find that the policy considerations in favor of finality of a judgment and especially those in preventing juror harassment outweigh any benefit to be obtained by permitting inquiry into the juror's thought processes after the jury has been discharged. Finally, such a conclusion squarely reflects the policy judgments underlying the content of M.R.Evid. 606(b).

■ Considering whether a court may permit a juror to testify that she was coerced into agreeing with the verdict, the Law Court in *Patterson v. Rossignol,* 245 A.2d 852 (Me.1968) prohibited the use of juror testimony to impeach a verdict.[3] The Court reasoned that policy considerations including:

(1) the need for stability of verdicts; (2) the need to conclude litigation and desire to prevent any prolongation thereof; (3) the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room; (4) the need to save jurors harmless from tampering and harassment by disappointed litigants; (5) the need to foreclose jurors from abetting the setting aside of

verdicts to which they may have agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude

245 A.2d at 857, warranted the policy conclusion that juror testimony could not impeach a verdict. These policy considerations similarly apply to prohibit correcting a mistake in the recording of a verdict by using evidence, obtained after juror discharge, to establish that the jury misunderstood the verdict form provided to them.

■ To admit affidavits of jurors to correct a mistake in recording the verdict would permit all losing parties to attack verdicts, thereby vitiating the finality and definitiveness of a judgment. *Cox v. Charles Wright Academy, Inc.,* 70 Wash.2d 173, 179, 422 P.2d 515, 520 (1967). Every dissatisfied litigant would be able to attempt to effectuate a revision of a verdict. *Roberts,* 116 R.I. at 298, 356 A.2d at 217; *Amodt,* 29 Wis.2d at 448, 139 N.W.2d at 10. To encourage parties to seek affidavits from jurors after they had been discharged unquestionably exposes jurors to harassment and to annoyance. A rule providing such encouragement would be contrary to sound policy. *Shears,* 324 Mass. at 361, 86 N.E.2d at 438. Further, such a rule would incite unsuccessful litigants to attempt to persuade jurors that the recorded verdict was not the one in fact agreed upon. *Chalmers,* 92 Ill.App.3d 54, 57, 47 Ill.Dec. 503, 506, 415 N.E.2d 508, 511 (1980), *aff'd,* 88 Ill.2d 532, 59 Ill.Dec. 76, 431 N.E.2d 361 (1982). In addition, after being discharged, jurors may talk with persons who may express an approval or disapproval of the jury's verdict. After such discussion, the juror may wish he or she had voted differently in the deliberations of the jury. The juror may then be tempted to say that he did vote differently, and that either the foreman incorrectly recorded his verdict or that he misunderstood the verdict form. If

---

**3.** The rule articulated in *Patterson* is now codified in M.R.Evid. 606(b). *See supra* note 2.

such reactions on the part of jurors were allowed, the verdict would cease to be final and the jurors would be subject to post-trial improper persuasion and influence. "In any event, the objective discovery of truth would be hampered, not promoted." *Amodt,* 29 Wis.2d at 448, 139 N.W.2d at 10 (quoting *Brophy v. Milwaukee Electric Railway & Transport Co.,* 251 Wis. 558, 30 N.W.2d 76, 81 (1947)). It is for these reasons that we affirm the justice's denial of the defendant's post-trial motions on the basis that juror affidavits presented in this case are inadmissible for the purpose of correcting a mistake in the recording of the verdict.

## IV.

The defendant Michaud argues that the court improperly dismissed the plaintiff's claims of negligence, breach of warranty, and strict liability against the codefendant, Lockwood. The codefendant Lockwood claims that Michaud has no standing to object to such a dismissal. Title 14 M.R.S.A. § 1851 (1980) provides that only parties "aggrieved" by judgments may appeal. For a party to be "aggrieved" by a judgment from which an appeal is sought, such judgment must operate prejudicially and directly upon a party's property, pecuniary, or personal rights. *Jamison v. Shepard,* 270 A.2d 861, 862–63 (Me.1970). Michaud can not be heard to complain about the dismissal of the plaintiff's negligence claim against Lockwood because, even though the justice had dismissed this negligence claim, the issue of whether Lockwood was negligent toward the plaintiff was submitted to the jury. The jury determined that Lockwood was not negligent. In effect, then, the negligence claim was not dismissed. Michaud, therefore, is not an aggrieved party for purposes of appeal as to the trial court's handling of plaintiff's negligence claim against Lockwood.

The defendant asserts that he was prejudiced by the dismissal of the plaintiff's breach of warranty and strict liability claims against Lockwood because the jury rendered its verdict against the defendant Michaud without the knowledge that the plaintiff had a viable claim against the co-defendant Lockwood. The plaintiff's negligence claim against Michaud is separate from and independent of the plaintiff's claims of breach of warranty and strict liability against Lockwood. To determine whether Michaud was negligent, the jury had to judge the conduct of Michaud toward the plaintiff without reference to whether Lockwood was liable under some theory, other than negligence, for the plaintiff's injuries. Because the defendant Lockwood's responsibility in warranty or strict liability for the plaintiff's injuries is irrelevant on the issue of whether Michaud was negligent, Michaud is not an "aggrieved" party and can not seek review of the dismissal of the plaintiff's claims against Lockwood. *See* 14 M.R.S.A. § 1851.

## V.

Finally, the third-party plaintiff Michaud asserts that the court erroneously granted the third-party defendant Lockwood's motion for directed verdict on both claims of indemnification and contribution for breach of warranty and strict liability. The justice granted the motion because he found that under both the breach of warranty theory and the strict liability theory, the causes of action accrue for purposes of the statute of limitations on the date the sale of the subject item takes place. In this case, the sale occurred in 1966. Accordingly, the justice determined that the claims were barred because the statute of limitations had run long before the suit was commenced in 1979.[4] Michaud asserts that, on the contrary, as his claims for indemnification or contribution accrued at the entry of judg-

---

4. The statute of limitations for a breach of implied warranty claim is four years. 11 M.R.S.A. § 2–725(1) (1964). For any civil action, including a claim for strict liability, the statute of limitations is six years. 14 M.R.S.A. § 752 (1980).

ment rather than on the date of sale of the harvester, his claims were not then barred by the running of the statute because they had not, at that time, accrued and no statute of limitations had begun running against them.

 Because Michaud's claims for indemnification and contribution are unique to him, the statute of limitations for these claims is applicable and not the statute of limitations which applies to the underlying plaintiff's claims of breach of warranty and strict liability. 1 Field, McKusick & Wroth, *Maine Civil Practice* § 14.2 at 291 (2d ed. 1970). The claims for indemnification and contribution do not accrue for the purposes of the statute of limitations until a judgment has been paid by the third-party plaintiff. 1 Field, McKusick & Wroth, *supra*, § 14.2 at 291; *see Chicago, Rock Island and Pacific Railroad Co. v. United States,* 220 F.2d 939, 941 (7th Cir.1955) (after plaintiff settled with defendant, defendant sought contribution and indemnification from third-party defendant, court held that statute of limitations began to run when defendant paid judgment to plaintiff); *see also Inhabitants of Veazie v. Penobscot Railroad Co.,* 49 Me. 119, 126–27 (1860) (town compelled to pay damages due to defect in highway, may bring indemnity claim against railroad within one year that liability of town ascertained and fixed). The third-party claim is maintainable even if the statute has run against the original plaintiff. 1 Field, McKusick & Wroth, *supra*, § 14.2 at 291. Consequently, the judge improperly dismissed, as barred by the statute of limitations, the third-party plaintiff's indemnification and contribution claims sounding in breach of implied warranty and strict liability.

The entry is

Judgment in favor of the plaintiff against the defendant Michaud affirmed.

Judgment in favor of Lockwood against third-party plaintiff Michaud vacated.

Remanded to the Superior Court to consider Michaud's indemnification and contribution claims against Lockwood based upon breach of warranty and strict liability.

All concurring.