(No. 54490.—

NANCY CHALMERS, Appellant, v. THE CITY OF CHICAGO *et al.,* Appellees.

*Opinion filed January 21, 1982.*

Sam Panger, Jr., of John M. Sorrentino Associates, Ltd., of Chicago, for appellant.

Stanley Garber, of Chicago (Robert R. Retke, Jerome A. Siegan, and Jetta N. Jones, of counsel), for appellees.

JUSTICE UNDERWOOD delivered the opinion of the court:

This is a personal injury action arising from an automobile accident on May 22, 1973, between plaintiff,

Nancy Chalmers, and Edward Meany, a police officer for the city of Chicago, who was driving a Chicago squad car at the time of the collision. Plaintiff filed a complaint in the circuit court of Cook County against the officer and the city of Chicago alleging wilful and wanton conduct by the officer. After the evidence had been presented, the trial court, over defendant's objection, allowed the complaint to be amended to include a count for negligence. The jury returned a verdict in open court in favor of the plaintiff and assessed damages as follows:

"We assess the damages in the sum of $1,705.99."
"We assess punitive damages in the sum of $13,000.00."

In answer to a special interrogatory, however, the jury found that Officer Meany was not guilty of wilful and wanton conduct. The trial judge accordingly entered judgment for plaintiff in the amount of $1,705.99. Plaintiff thereafter filed a post-trial motion supported by affidavits of 11 of the 12 jurors, 10 of which were notarized, asking the trial judge to enter a final order conforming the verdict to the intention of the jury to award $14,705.99 in compensatory damages, or in the alternative to reassemble the jurors and poll them regarding their intentions, or to enter an order for additur because of the inadequacy of the verdict, or to grant a new trial solely on the issue of damages. The trial judge denied all post-trial relief predicated on the jurors' affidavits, and the appellate court in the First District, noting that its decision was in conflict with the Third District's decision in *Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, affirmed (92 Ill. App. 3d 54). We allowed plaintiff's petition for leave to appeal.

The collision occurred at an uncontrolled intersection in Chicago on a rainy afternoon. Plaintiff testified that she was proceeding south on Paulina, a one-way street, at approximately 20 miles per hour, with two passengers in the front seat, one her two-year-old daughter. When she

approached 85th Street, she indicated that she slowed to less than 10 miles per hour, saw a squad car approximately 100 to 150 feet to her right proceeding east, and continued through the intersection. As she was more than half way through the intersection she stated that her passenger, Patricia Knox, screamed that they were going to be hit, and when she looked to her right the squad car was 10 to 20 feet away, traveling at 45 to 50 miles per hour. She pressed the accelerator and the impact occurred. Mrs. Knox corroborated this testimony. Neither of her passengers was injured. Plaintiff was able to drive home but was subsequently hospitalized for two weeks for neck, arm and back injuries. The extent and duration of her injuries which were caused by this accident were in dispute in part because plaintiff was involved in a subsequent automobile accident as a passenger in which she sustained similar injuries, and also because plaintiff was impeached by her doctor's testimony and the medical reports. Plaintiff testified that she underwent a dilation and curettage procedure as a result of a miscarriage while she was hospitalized. However, the medical reports did not contain such information, and one of the treating physicians testified that in fact only a pap smear had been taken. There were also other discrepancies concerning her treatment and its length while she was hospitalized. She was released in good condition. She testified, however, that she was still suffering "ill effects" from both of the accidents.

Officer Meany's testimony conflicted with plaintiff's in several material respects. He stated that he was on an assignment in which he was following a driver who was involved in an accident while driving without a valid license. He indicated that he was proceeding east on 85th Street escorting the other driver to the station at about 15 miles per hour. He observed plaintiff's car approach the intersection and swerve to the right to avoid hitting the

car in front of him. He slammed on his brakes, and the impact occurred. He estimated his speed at five to eight miles per hour at the point of impact. There were minor discrepancies between his testimony at trial and that given in a previous deposition. Defendant introduced a photograph of the police vehicle which showed the damage to be minimal; the headlights were not broken and the grill was not damaged. There was only a slight dent to the left of the headlight.

In his closing arguments, plaintiff's counsel asked the jury to return a verdict for $14,500, which he explained was the approximate total of medical expenses of $1,705.99 plus damages for the nature and extent of plaintiff's injury, temporary disability, and pain and suffering. He made no reference to punitive damages.

The affidavits upon which plaintiff relies were sent to each member of the jury by plaintiff's trial counsel following a conversation he had with individual jurors in which they allegedly indicated their mistake. In pertinent part, the affidavits stated:

> "[I] t was the consensus of all members of the twelve person jury that the Plaintiff should receive the entire amount of $14,705.99 for medical expenses, nature, extent and duration of the injury, disability resulting from the injury and the pain and suffering experienced, and we were confused by the form of verdicts furnished to us and were unsure of how to return verdicts in accordance with our agreement; that we were uncertain if we could request communication with the presiding judge to obtain clarification of the instructions on how to return a verdict allowing recovery for the Plaintiff for medical expenses and compensatory damages; that since we did not request clarification we placed the $13,000.00 for compensatory damages in the blank reserved for punitive damages, believing it to mean damages for nature, extent and duration of the injury, disability resulting from the injury and pain and suffering experienced by the Plaintiff."

Plaintiff contends on appeal that the trial court erred in

either failing to correct the verdict or grant a new trial. We do not agree.

It is well established in this State, and almost universally recognized, that a jury may not impeach its verdict by affidavit or testimony which shows the motive, method or process by which the verdict was reached. (*People v. Preston* (1979), 76 Ill. 2d 274, 288; *People v. Holmes* (1978), 69 Ill. 2d 507, 511; see also *People v. Tobe* (1971), 49 Ill. 2d 538, 543; *People v. Pulaski* (1958), 15 Ill. 2d 291, 300; *Smith v. Eames* (1841), 4 Ill. (3 Scam.) 76, 81; Fed. R. Evid. 606(b).) Thus, it is impermissible to challenge a verdict following the jury's discharge by explaining the basis for the jury's findings (*Smith v. Eames* (1841), 4 Ill. (3 Scam.) 76, 81) or by asserting that the jury was mistaken (*Suver v. O'Riley* (1875), 80 Ill. 104). Plaintiff argues, however, that jurors' affidavits are competent to correct an error in recordation in the nature of a clerical mistake. She relies primarily upon the Third District's decision in *Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386.

In *Hunter,* the court held that affidavits may be considered where the record itself shows that the jury is hopelessly confused or the affidavits tend to show that the verdict rendered and recorded was not the one agreed upon by the jurors. The record there indicated that the jury was confused by the verdict forms. Two lawsuits arising from an automobile accident were tried together and four forms of verdict, two for each claim, were submitted to the jury. Both drivers' fathers, who were the owners of the vehicles involved, sought property damages. The jury had twice sought clarification of the verdict forms from the presiding judge, but the judge deemed it inappropriate to confer with the jury outside the presence of the attorneys and accordingly denied its request. The jury returned a verdict against the owner, Smallwood, in the first action, thereby denying recovery for damage to

his vehicle, and against his son, the driver, in the second action, thereby allowing recovery to the other owner for the damage to his vehicle. The verdicts so rendered were therefore entirely consistent with each other.

The affidavits of four of the six jurors, including the foreman, were submitted to the trial judge in support of defendant Smallwood's post-trial motion for judgment *n.o.v.* or a new trial. They stated that the jury was confused by the forms of verdict and intended to disallow recovery for property damage in either case. The appellate court, while conceding that it may be difficult to understand jury confusion on relatively simple verdict forms to the point of returning a verdict for $2,500 when it intended to deny recovery, nevertheless reversed and remanded for a new trial. Because no petition for leave to appeal was filed, we did not have the opportunity to review the precise holding in *Hunter* concerning jurors' affidavits, but it does not appear to be in accord with our subsequent decisions. See *People v. Preston* (1979), 76 Ill. 2d 274; *People v. Holmes* (1978), 69 Ill. 2d 507, 511; see also Rizzi, *The Period After Closing Arguments—An Important But Overlooked Part Of A Trial,* 69 Ill. Bar J. 634 (1981).

There is no single rule among the States which governs the competency of affidavits to show that a verdict was not correctly recorded. (Annot., 18 A.L.R.3d 1132, 1135 (1968); 76 Am. Jur. 2d *Trial* sec. 1226 (1975).) While there is substantial authority supporting the view that such evidence may be received to show mistakes of a clerical nature (*e.g., Rose v. Thau* (1974), 45 App. Div. 2d 182, 357 N.Y.S.2d 201; *Glennon v. Fisher* (1932), 51 Idaho 732, 10 P.2d 294), many jurisdictions hold to the contrary (*e.g., Roberts v. Kettelle* (1976), 116 R.I. 283, 356 A.2d 207; *Ford Motor Credit Co. v. Amodt* (1966), 29 Wis. 2d 441, 139 N.W.2d 6; see generally Annot., 18 A.L.R.3d 1132 (1966).) The only Illinois cases we have

found in which a clerical mistake in recordation was considered are *Loucks v. Pierce* (1950), 341 Ill. App. 253, 257, wherein the court recognized such an exception to the general rule but did not have occasion to apply it, and *Schwamb Lumber Co. v. Schaar* (1901), 94 Ill. App. 544, wherein the court ordered a new trial upon unanimous affidavits from all jurors that they signed the wrong verdict form as a result of a mistake as to the parties.

An examination of the authorities allowing such evidence reveals a lack of consistency in defining the nature of a clerical error and in many cases the failure to distinguish between impeachment of the verdict itself by explaining the basis upon which the verdict was reached. (But see *Bauer v. Kummer* (1955), 244 Minn. 488, 70 N.W.2d 273 (wherein the court recognized the distinction).) Unanimity is one factor that tends to influence the courts toward viewing the error as a correctable recordation one rather than as one involving the jury's deliberations which is not regarded as correctable because the attack is on grounds which inhere in the verdict itself. (See Annot., 18 A.L.R.3d 1132, 1136 n.12 (1968).) It is apparent to us that under the facts before us plaintiff seeks to impeach the verdict not because of a "clerical" mistake in recordation but because of the jury's misapprehension of the instructions or the effect of their findings. This type of impeachment is clearly impermissible.

The authorities are in accord that the testimony or affidavits of jurors cannot be used to show that the jury misunderstood the instructions or the law (see 8 Wigmore, Evidence sec. 2349 (rev. ed. 1961) and cases cited therein), the effect of a particular finding or of their verdict (see 66 C.J.S. *New Trial* sec. 169(n) (1950); 76 Am. Jur. 2d *Trial* sec. 1220 (1975)). The meaning and effect of the verdict must be judged from its terms alone. "Hence, *no statements by the jurors,* either unanimously or individually can be resorted to for *explaining or changing its mean-*

*ing or legal effect.*" (8 Wigmore, Evidence sec. 2356, at 723 (rev. ed. 1961).) As Dean Wigmore explains:

> "This must be so by virtue of the general principle that a legal act is to be construed by the words used in it and not by the private meaning or intention of the person uttering them. [Citation.] To resort to the jurors' motives, beliefs or intentions would be to violate the general principle *** [8 Wigmore, Evidence sec. 2349 (rev. ed. 1961)] [that] the verdict as uttered is the sole embodiment of the jury's act and must stand as such without regard to the motives or beliefs which have led up to its act [8 Wigmore, Evidence sec. 2349 (rev. ed. 1961)]."

The affidavits submitted by the plaintiff to the trial court in support of the post-trial motion state that the jury intended to award damages to the plaintiff for the nature, extent and duration of her injury, temporary disability, and pain and suffering, and that the dollar figure was placed in the punitive damage blank because the jury believed that such blank was reserved for this purpose. The effect of these affidavits, if recognized, is, of course, to impeach and change the legal effect of the jurors' verdict in direct contravention of the established rule. (8 Wigmore, Evidence sec. 2356 (rev. ed. 1961); *People v. Preston* (1979), 76 Ill. 2d 274, 288; *People v. Holmes* (1978), 69 Ill. 2d 507, 511.) That the jury may have misunderstood the meaning of the word "punitive" is unfortunate. Nevertheless, they had been instructed that if they found the defendant guilty of wilful and wanton conduct they could assess damages to punish the defendant "in addition to any damages" to which they found the plaintiff entitled. The jury answered the special interrogatory in favor of the defendant, thus precluding an award for punitive damages. If there was an error, it should have been discovered prior to the jury's discharge, at which point the trial judge could have taken such action as might have been appropriate. Plaintiff had a right to poll the jurors. She cannot now substitute the affidavits of the

jurors following her *ex parte* communication with them for the purpose of impeaching their verdict.

In view of the inconsistency between the jury's special finding and the general verdict, the trial court correctly disallowed the award for punitive damages. (See Ill. Rev. Stat. 1977, ch. 110, par. 65; *Albaugh v. Cooley* (1981), 87 Ill. 2d 241.) For the reasons stated the post-trial relief predicated upon the affidavits of the jurors was correctly denied.

The judgment of the appellate court affirming the judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*