March 15, 1999

NO. 4-98-0295

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

ROBERT BLAKEY, ) Appeal from

Plaintiff-Appellant and ) Circuit Court of

Cross-Appellee, ) Champaign County

v. ) No. 94L1684

GILBANE BUILDING CORPORATION, )

Defendant-Appellee and )

Cross-Appellant, )

and )

JOHNSON CONTRACTING COMPANY, INC., ) 

Third Party Defendant- ) Honorable

Appellee and Cross- ) John G. Townsend,

Appellant. ) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Robert Blakey, was injured October 10, 1989, when he fell while working on a severely pitched roof on the bio-

tech laboratory at the University of Illinois.  Blakey complained of severe pain in his left arm and a tingling sensation in the fingers of his left hand.  He was ultimately diagnosed as having suffered a dislocated left shoulder and reflex sympathetic dystrophy in that shoulder.  Blakey was em­ployed by third-party defen­dant, Johnson Con­tract­ing Company, Inc. (John­son).  The construc­tion manager on the project was defendant Gilbane Build­

ing Corporation (Gilbane).

Blakey filed a two-count com­plaint against Gilbane, alleging Gilbane failed to provide him a "safe, suitable and proper temporary support," in violation of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69), and that Gilbane was guilty of negli­gence.  Gilbane then filed a third-

party complaint against Johnson, alleg­ing that if Gilbane were found liable, Gilbane was enti­tled to contribu­tion from Johnson commensurate with Johnson's relative degree of fault under the Joint Tortfeasor Contribu­tion Act (740 ILCS 100/0.01 
et seq. 
(West 1996)).  Blakey origi­nal­ly filed suit in Cook County, but the case was trans­ferred to Champaign County on account of 
forum non conve­niens.  Blakey v. Gilbane Building Co., 
264 Ill. App. 3d 626, 637 N.E.2d 442 (1994).    

Jury trial commenced October 7, 1996, and on October 16, 1996, the jury returned an itemized verdict finding Blakey's total damages to be $1,690,000, and attributing the percent­age of negligence or fault 20% to Blakey, 40% to Gilbane, and 40% to Johnson.  The jury was also given the following special interro­

gatory:  "On the date of the accident and at the time and place of the accident in question, was the sole proxi­mate cause of the injury to the plaintiff the conduct of some person or persons other than the defendant Gilbane?"  The jury, inconsis­tent with its verdict, an­swered that interrogatory in the affirma­tive.  

On November 1, 1996, the circuit court entered judgment on the special interrogatory in favor of defendants, result­ing in a zero award for Blakey.  Blakey then filed a posttrial motion, attaching the affidavit of a juror who stated that the jury had clearly concluded that "Gilbane was guilty" and should pay, along with Johnson, the percentage listed.  Eventually a similar letter, signed by all the jurors (there were only 11), was filed.  On January 24, 1997, the circuit court ordered a new trial, stating:

"I have concluded that the jury instructions 

as a whole, including the verdict form and 

special interroga­tory were objec­tively not 

suffi­ciently clear and understand­able to 

permit the judgment as entered to stand.  

The length, complexi­ty, and interrelation­-

ship of the instructions and verdict forms 

do not render them suffi­ciently comprehensible."

Gilbane and Johnson petitioned for leave to appeal from the order granting a new trial, pursuant to Supreme Court Rule 306(a)(1) (166 Ill. 2d R. 306(a)(1)), but this court denied the petition (Nos. 4-97-0116, 4-97-0121).  That denial did not address the merits of the case and so does not foreclose Gilbane and Johnson from raising any issues con­cerning the decision to grant a new trial.  See 
Koenig v. National Super Markets, Inc., 
231 Ill. App. 3d 665, 667-69, 596 N.E.2d 1329, 1331-32 (1992).  

On September 5, 1997, three days before the new trial was to begin, Gilbane filed a motion for sanctions, alleging that Blakey had failed to disclose, during his deposition and in answers to interrogatories, that he had been hospitalized between November 27 and December 2, 1984, at Memorial Medical Center in Springfield, with a complaint of injury to his left shoulder and back.  Gilbane, in its brief, states that it learned of this information about three weeks before the new trial date, and "it was not until counsel for [d]efendant received an offer from an investiga­tion company for a free investigation that information regarding the 1984 injury was discovered."  Gilbane asked that the court bar all plaintiff's medical testimony and other evi­

dence and for other sanctions as the court deemed appropriate.

The trial court allowed the parties to present evidence when the motion for sanctions was heard, three days after it was filed, but Blakey pre­sent­ed no evi­dence.  On September 8, 1997, the trial court granted the motion for sanctions and dismissed the com­plaint, stating (1) it would be very costly and time consuming to redo the signifi­cant amount of work that had been done, to incorporate informa­tion regard­ing the 1984 injury; (2) what was in­volved here "is abso­lute­ly, plainly, clearly, unequiv­

ocally a false answer to an inter­rogato­ry an­swer"; (3) the infor­

mation went to the heart of the claim for injury, which was a complicat­ed claim, and "might just as easily have been a criti­cal piece of infor­mation to experts of all varieties as to be as inconsequen­tial as urged by plaintiff's counsel."  On September 12, 1997, the circuit court entered a written order, stating: 

"This Court hereby finds that the failure to 

disclose this information was material and 

for reasons stated for the record and after 

having considered all available possible sanc-

­tions, concludes that the only appropri­ate 

sanction is to dismiss the complaint with 

preju­dice."  

Blakey filed a motion to reconsider.  Blakey also filed an affidavit stating that he had forgot­ten about the 1984 stay at Memorial Medical Center, his left shoulder was not injured in the 1984 accident, he did not consider the workers' compen­sation claim filed on his behalf in connection with the 1984 accident to be a personal injury "lawsuit," and he was not aware that his attorney had filed a third-party lawsuit separate and apart from his workers' compensation claim.  Blakey also attached an affida­

vit from Dr. F. William Schroeder, who had treated him at Memori­

al in 1984, advising that Blakey had no significant injury to his left shoulder and was treated only for complaints related to his lower back.  Dr. Joseph Schrodt, who had treated Blakey subse­

quent­ to 1987, stated in an affidavit that nothing concern­ing Blakey's 1984 hospitalization at Memorial would change his opinion regarding the injury to Blakey's left shoulder sustained on October 10, 1989.  On March 20, 1998, the circuit court considered the affidavits, and reconsidered its ruling, but again determined that dismissal with prejudice was appropriate.  

Blakey appeals the March 20, 1998, order dismissing the case with preju­dice.  Gilbane and Johnson cross-appeal the court's January 24, 1997, order granting a new trial. 

I.  THE SANCTION OF DISMISSAL

Supreme Court Rule 219(c) provides that the court may enter "such orders as are just," where a party "unrea­son­ably fails to comply" with the discovery rules, or "fails to comply with any order entered under these rules," including an order that the offending party's action be dismissed with prejudice.  166 Ill.2d R. 219(c).  The decision to impose a partic­u­lar sanction is within the discretion of the trial court; only a clear abuse of discre­tion justifies reversal.  
Shimanovsky v. General Motors Corp., 
181 Ill. 2d 112, 120, 692 N.E.2d 286, 289 (1998) (a de­structive testing case).  We do not defer, however, to a trial court's factual findings made on the basis of affida­

vits.  
Cf. Majca v. Beekil, 
183 Ill. 2d 407, 701 N.E.2d 1084 (1998) (summary judgment).  A just order of sanc­tions under Rule 219(c) is one which, to the degree possible, ensures both discov­

ery and a trial on the merits.  
When 
impos­ing sanctions, the court's purpose is to coerce compli­ance with discovery rules and orders, not to punish the dilatory party.  
An 
order of dismissal with preju­dice or a sanc­tion that results in a default judgment is a drastic sanction to be invoked only in those cases where the party's actions show a deliberate, contuma­cious, or unwarranted disregard of the court's authority.   
Shimanovsky, 
181 Ill. 2d at 123, 692 N.E.2d at 291.  

To determine if the trial court abused its discretion, a reviewing court must look to the criteria upon which the trial  court relied in making its deter­mination of an appropriate sanction.   
Shimanovsky, 
181 Ill. 2d at 123, 692 N.E.2d at 291.  The factors a trial court is to use in determin­ing what sanction, if any, to apply are (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evi­dence; (3) the nature of the testimony or evi­dence; (4) the diligence of the adverse party in seeking discov­ery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence.   
Shimanovsky, 
181 Ill. 2d at 124, 692 N.E.2d at 291.  

On April 20, 1995, Blakey gave the follow­ing answers to interrogatories.  

"9.  Q.  During the five years immediate-

ly prior to the date of said occurrence, had 

you been confined in a hospital, treated by 

a physician or x-rayed for any reason other 

than personal injury?  If so, give the name 

and address of each such hospital, physician, 

technician or clinic, the approximate date of 

each such confinement or service and state, in 

general, the reason for such confinement or

service.

A.  In approximately 1988, I had hernia

surgery at Memorial Medical Center, 800 North

Rutledge, Springfield, Illinois.

10.  Q.  Have you suffered any personal 

injury prior to the date of said occurrence?  

If so, state whom, where and in general, how 

you were so injured and describe in general 

the inju­ries suf­fered.

A.  No.

12.  Q.  Have you ever filed any other 

suit for your own personal injuries?  If so, 

state the court in which filed, the year 

filed and the title and docket number of 

said case.

A.  No."

On June 26, 1995, Blakey gave the following answer in his discov­

ery deposition.

     "Q.  Have you ever injured your left 

shoulder before the accident?

A.  No, Sir."

The records of Memorial Medical Center indicate that Blakey was treated on November 27, 1984.  The records contain the following history.  

"H & P:  Patient is a 32[-]year[-]old man 

with chief complaint of pain in the lower 

back and down both legs.

HISTORY OF PRESENT ILLNESS:  This is a 32[-]

year[-]old white male who states that while 

working at a sheet metal job [he] sustained in-

jury to his left shoulder and lower back.  

Patient states that a 300[-]lb. piece of 

duct piping fell on his left shoulder[,] 

which doubled him over in pain.  Patient 

states he had immediate pain in his lower 

back as well as down both of his legs.  

Patient states he has been on bedrest at 

home for the last week but the pain has not 

re­solved.  Patient was seen in Dr. Schroeder's 

office at which time it was felt as though 

the patient would benefit from bedrest and 

hospital­ization.  Patient is admitted at this 

time for conservative treatment.   Patient 

states he has numbness and tingling down both 

legs, down the posterior aspect of his thighs 

as well as his calfs and down radiating into 

his toes. 

IMPRESSION:  1.  Acute lumbosacral strain

   2.  May possibly have a minor 

fracture in the lower vertebra."

It appears that Blakey's deposition answer was accu­

rate, that he did not injure his left shoulder in the 1984 accident.  Blakey should have disclosed the 1984 accident in response to the interrogatories.  Blakey was hospi­talized for five days at that time and was off work for perhaps four months.  In his brief, however, Blakey notes that, between October 10, 1989, and the time he answered the interrogatories, he had been at seven different hospitals with three separate surgeries and had in­curred medical expenses of approximately $80,000.  There was a period of over 11 years, with all of the intervening medicals, between the 1984 accident and the answering of the interrogatories.  The trial court chose not to address the failure to disclose "the 86 L case," the third-party action filed, along with the workers' compensation claim, as a result of the 1984 acci­dent. 
 Gilbane criticizes the affida­vits presented by Blakey on his motion for recon­sidera­tion as untimely and as "notable for their improb­ability."  The unrebutted affida­vits, however, which were consid­ered by the circuit court, raise at least a question of fact whether Blakey was acting in good faith and whether there was "clearly" a false answer to an interrogato­

ry.  

Blakey argues it is possible for defendants to be afforded discovery and for there to be a trial on the merits.  
Shimanovsky, 
181 Ill. 2d at 123, 692 N.E.2d at 291.  Defendants can take additional evidence depositions or their witnesses may be called at trial.  Blakey and his witnesses at trial can be cross-examined.  The cost of addi­tional discov­ery may be as­sessed against Blakey as a sanc­tion.  Defen­dants do not dispute these asser­tions.  Instead they argue that sanctions must be propor­

tionate to the gravity of the violation.  The cases cited by defen­dants all involve repeat­ed miscon­duct and conduct clearly more repre­hensible than that involved in this case.  
Ostendorf v. Interna­tional Harvester Co., 
89 Ill. 2d 273, 282, 433 N.E.2d 253, 257 (1982) (test results assertedly not available; asser­tions either outright false­hoods or half-truths equivalent to outright lies); 
Harris v. Harris, 
196 Ill. App. 3d 815, 824, 555 N.E.2d 10, 16 (1990) ("a repeated indiffer­ence to the court's orders"); 
In re Estate of Soderholm, 
127 Ill. App. 3d 871, 878-79, 469 N.E.2d 410, 416 (1984) (repeated lying at depositions and de­

stroying physical evidence).  The conduct in this case cannot be said to show that "deliberate, contumacious or unwar­ranted disregard of the court's authority" that is required before a dis­missal with prejudice may be imposed.  
Shimanovsky, 
181 Ill. 2d at 123, 692 N.E.2d at 291.  Punishment is not the goal of a discovery sanc­tion, and this is not a case where a party's actions, even if inadvertent, have made a fair trial impos­si­ble.   The trial court was uncertain whether the 1984 acci­

dent, which apparently caused no injury to Blakey's left arm, was "a critical piece of information" or whether it was "inconsequen­

tial as urged by plaintiff's counsel."  Unlike the destructive testing cases, however, it is possible to find out whether the information not disclosed here was critical or inconsequential.    Blakey's expert, Schrodt, has already said that it was inconse­

quential.  Any prejudice to defendants was in the form of lost time or lost money, which can be remedied with a sanction short of dismiss­al.  

After considering all the factors set out in 
Shimanovsky, 
the criteria upon which the trial court relied, and the affidavits considered by the trial court, we conclude that the trial court clearly abused its discretion in ordering dis­

miss­al with prejudice as a sanction.  We reverse and remand for the circuit court to consider a lesser sanction and to set this case for trial.      

II.  THE SPECIAL INTERROGATORY

Section 2-1108 of the Civil Practice Law provides:   "[t]he jury may be required by the court, and must be required on request of any party, to find specially upon any material ques­

tion or questions of fact submitted to the jury in writing."  735 ILCS 5/2-1108 (West 1996); 
cf. 
28 U.S.C. app. Fed. R. Civ. Proc. 49(b) (1994) (not mandatory that special interrogatory be submit­ted).  When the special finding is incon­sis­tent with the general ver­dict, the special finding controls.  735 ILCS 5/2-1108 (West 1996).  A special interrogato­ry is not proper unless it relates to an ultimate fact in the case.  A special interroga­tory on an eviden­tiary fact would not neces­sari­ly be inconsistent with the general verdict and could not be held to control the general verdict.  See 
Ross v. Aryan Internation­al, Inc., 
219 Ill. App. 3d 634, 650-51, 580 N.E.2d 937, 947 (1991).  The reason the special finding controls is that a jury more clearly understands a particularized special inter­rogatory than a compos­ite of all the questions in a case.  A special finding upon which a jury presum­

ably has more intensively focused its atten­tion should prevail over an incon­sistent general verdict.  See 
Borries v. Z. Frank, Inc., 
37 Ill. 2d 263, 266, 226 N.E.2d 16, 19 (1967). 

In the present case the general verdict, which required the jury to determine the exact percentage of Gilbane's fault, was more particularized than the special interrogatory.  It would appear that the jury more intensively focused its attention on the general verdict than on the special interrogatory.  The special interrogatory is a venerable common law device, but since 
Alvis v. Ribar, 
85 Ill. 2d 1, 421 N.E.2d 886 (1981), which abol­

ished con­tribu­tory negli­gence as a bar and substi­tuted compar­a­

tive negli­gence, it has been unusual for the jury to render a verdict that is simply "a compos­ite of all the ques­tions in a case," a verdict that, for exam­ple, states "We, the Jury, find for the plain­tiff and against the defendant." 
 
There was no benefit to be gained from the special interrogatory in this case.      The argument could be made that special interrogatories frequently do not achieve their purpose and often disrupt a trial with a result not understood by the jury and not expected by the court or the parties.  The possibility of an unintended, un-

reasoned result is made more likely by the fact that the court and counsel are severely restricted in their discussion of a special interrogatory.  The function of a special interrogatory is to act as a check upon the deliberations of the jury, to test the general verdict against the jury's conclusions as to the ultimate facts.  
It 
would interfere with that function if the jury were informed of the source of the interro­gatory or in­formed of the necessity of conforming the answer to the special inter­

rogatory with its general verdict.  
Sommese v. Maling Brothers, Inc., 
36 Ill. 2d 263, 266-67, 222 N.E.2d 468, 470 (1966); 
cf. 
9A C. Wright & A. Miller, Federal Prac­tice & Proce­dure §2509, at 196-98 (2d ed. 1995) (hereinafter Federal Practice & Procedure) (pref­er­a­ble ap­proach under Federal Rule 49(b) is that it is not error to allow the jury to know the legal effect of its answers).  It is proper, however, to argue to the jury that a special interrog­ato­ry should be answered in accor­dance with the evidence.  
Batteast v. Wyeth Laboratories, Inc., 
137 Ill. 2d 175, 185-86, 560 N.E.2d 315, 319-20 (1990); 
cf. 
9A Federal Prac­tice & Proce­

dure §2509, at 197 (
even so, the jury is likely to con­clude what parties want the answer to be).  In this case none of the parties men­tioned the special interroga­tory in their closing arguments.  In a juris­dic­tion where no comment is allowed on the special inter­rogatory it is very important that the special interrogatory be carefully worded.           

We reject Gilbane's argument that the only question before this court is whether the special interrogatory, consid­

ered alone, was submitted in proper form, not whether the jury instructions and special interrogatory, taken as a whole, were confusing.  A special inter­rog­a­to­ry should be read togeth­er with the jury instructions to deter­mine how the inter­rogatory was under­stood by the jury and whether any confusion resulted.  See  
LaPook v. City of Chicago, 
211 Ill. App. 3d 856, 865, 570 N.E.2d 708, 713 (1991); 
Betts v. Manville Personal Injury Settlement Trust, 
225 Ill. App. 3d 882, 901-02, 588 N.E.2d 1193, 1206 (1992); see also 
Bruske v. Arnold, 
44 Ill. 2d 132, 136-37, 254 N.E.2d 453, 456 (1969) (improper to ask whether plaintiff was negligent without asking whether such negligence was a proximate cause; interroga­tory, however, not prejudicial when taken togeth­

er with instruc­tions).    

Gilbane states that it modeled its special interroga­

tory on the one approved in 
Snyder v. Curran Township, 
281 Ill. App. 3d 56, 666 N.E.2d 818 (1996).  The beginning language of that interrogatory, "on the date of the accident and at the time and place of the accident in question," has been criticized.  A special interrogatory asking whether the plaintiff is the sole proximate cause of the accident can be confusing where the plaintiff is the only "actor" and the alleged negligence of the defendant oc­curred at some earlier time.  See 
Snyder, 
281 Ill. App. 3d at 67-68, 666 N.E.2d at 826 (Garman, J., dis­sent­ing).  At any rate, Gilbane's interrogatory differs from that in 
Snyder.  
The inter­rogatory in 
Snyder 
asks whether the conduct of a partic­

ular person, the plaintiff, was the sole proximate cause of the accident.  Gilbane's interrogato­ry asks whether the conduct of unidentified persons "other than the defendant Gilbane" was the "sole proximate cause" of the accident.  In this case, the acci­

dent had to have been caused by Blakey, Gilbane, or Johnson.  Gilbane's special inter­rog­a­to­ry would have been simpler and more direct if it had asked "was the conduct of Gilbane a proxi­mate cause of the injury to plain­tiff?"  It was misleading for the instructions to ask whether the conduct of Gilbane was "a proxi­

mate cause" but for the special interroga­tory to ask whether the conduct of others than Gilbane was the cause.  The term "proxi­

mate cause" was defined for the jury ("it need not be the only cause, nor the last or nearest cause"), but the term "sole proximate cause" was not.           

When the jury was asked whether it found for Blakey and against Gilbane it answered "yes" under the Structural Work Act and "yes" under negligence.  When the jury was asked whether it found for Gilbane and against Johnson on the contribu­tion claim it answered "yes."  The special interrogatory was constructed so that if the jury answered "yes," that answer would be inconsis­

tent with all the previous "yes" answers.

A special interrogatory that is in proper form must be submitted to the jury.  However, a special interrogatory that is repetitive, misleading, confusing, or ambiguous is not in proper form.  
Snyder, 
281 Ill. App. 3d at 60-61, 666 N.E.2d at 821-22.  Where the trial court finds that a special interroga­tory was not properly given, or that the jury's answer to the special inter­

rogatory was contrary to the manifest weight of the evi­dence, the trial court may order a new trial.  
Borries, 
37 Ill. 2d at 265-

66, 226 N.E.2d at 18-19 (no authority 
to enter judg­ment in accor­

dance with general verdict).  The trial court may not, howev­er, con­clude from the mere fact of inconsis­tency between the general verdict and the special inter­rogatory that the jury was confused in entering the special interrogatory.  To so hold would "patent­

ly nullify the pertinent provision" of section 2-1108 of the Civil Practice Law that the special inter­rogatory controls in cases of incon­sis­ten­cy.  
Borries, 
37 Ill. 2d at 266-67, 226 N.E.2d at 19 (under the language of section 2-1108, then section 65 of the Civil Practice Act (Ill. Rev. Stat. 1965, ch. 110, par. 65), howev­er, the court may have some discre­tion not to enter judgment in accor­dance with the special inter­rogato­ry).  

Johnson argues that in determining whether a special finding is inconsistent with a general verdict the evidence itself should not be considered and that a court may not look to the contextu­al evidence in a case to construe the meaning of a special interro­gatory.  The fact that the court would have decided differently on the evidence is not enough to show the jury was confused by the special interrogatory, but it is not correct that the court must ignore the evidence in determining whether there was confusion.  A special inter­rogato­ry that is inadequate because it questions only an evidentiary fact cannot, however, be aided by looking at the evidence.  
Wicks v. Cuneo-

Henneberry Co., 
319 Ill. 344, 350-51, 150 N.E. 276, 279 (1925).  

A jury may not impeach its verdict by affidavit or testimony that shows the motive, method, or process by which the verdict was reached.  
Chalmers v. City of Chicago, 
88 Ill. 2d 532, 537, 431 N.E.2d 361, 363 (1982).  Of course, in this case the verdict was not impeached by the affidavits; it was the special interrogatory that was impeached.  It may be possi­ble to receive affidavits to show mistakes of a cleri­cal nature, partic­

ularly where there are unanimous affida­vits from all jurors.  
Chalmers, 
88 Ill. 2d at 538-39, 431 N.E.2d at 364-65.  In 
Chalmers, 
the jury assessed damages in the amount of $1705.99 and punitive damages in the amount of $13,000, but answered in a special interrogatory that defendant was not guilty of willful and wanton conduct.  Eleven of the twelve jurors later signed affidavits stating the $1,705.99 was for medical expenses, and they mistak­en­ly placed the $13,000 in the punitive damages blank, intending to award damages for disability and pain and suffering.  The court held this was not a clerical mistake but "the jury's misapprehen­sion of the instruc­tions or the effect of their findings."  
Chalmers, 
88 Ill. 2d at 539, 431 N.E.2d at 364.  The testimony or affida­vits of jurors cannot be used to show that the jury misun­derstood the in­struc­tions or the law, the effect of a particu­lar finding, or the effect of its verdict.  "The meaning and effect of the verdict must be judged from its terms alone."  
Chalmers, 
88 Ill. 2d at 539, 431 N.E.2d at 364-65.  Again, the jury was not at­tempting to impeach the special inter­rogatory in 
Chalmers, 
but the verdict form.   

We understand the trial court's ruling to be that the special interrogatory was not in proper form, that the special interrogatory was "repetitive, misleading, confusing, or ambigu­

ous," when considered in connection with the other instructions.  
Snyder, 
281 Ill. App. 3d at 59, 666 N.E.2d at 821; see also 
LaPook, 
211 Ill. App. 3d at 865, 570 N.E.2d at 713; 
Betts, 
225 Ill. App. 3d at 901-02, 588 N.E.2d at 1206.  In such a situation, the trial court has the authority to grant a new trial.  
Borries, 
37 Ill. 2d at 265-66, 226 N.E.2d at 18-19.  

It is generally stated that a court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirma­tively shown that it clearly abused its discretion.  In determin­ing whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial.  
Maple v. Gustafson, 
151 Ill. 2d 445, 455-56, 603 N.E.2d 508, 513 (1992).  Particular deference should be given the trial court's decision to grant a new trial when that decision sup­ports, rather than overturns, the jury's verdict.  

In this case, there was more than an inconsisten­cy between the answer to the special interrogatory and the general verdict.  See 
Borries, 
37 Ill. 2d at 265-66, 266 N.E.2d at 18-19; see also 
Freeman v. Chicago Transit Authority, 
33 Ill. 2d 103, 105-06, 210 N.E.2d 191, 193-94 (1965).  Having deter­mined that the special inter­rog­a­to­ry was improp­er, the trial court could easily conclude that the jury was confused and that Blakey would be denied a fair trial if judgment were entered on the special interrogatory.   

Finally, defendants argue that Blakey waived his objec­

tions by not sufficiently objecting to the special interrogatory and by not asking the jury to explain its verdict before it was dis­charged.  Blakey did object to the special interrogatory:

"Well, I am going to object to the special 

interrogato­ry in light of the fact we have 

an itemized verdict and this singles out the 

sole proximate cause of the injury to the 

plain­tiff as a defense to the case.  I don't 

think that sole proximate cause should be 

allowed to be a de­fense, because the plain-

tiff has the burden of proving proxi­mate cause.  

If we fail in that regard, then the verdict 

should be for the defendant so I don't think 

that this special interrog­atory should be 

given."  

Blakey's arguments that the special interroga­tory was repetitive, incapable of achieving its purpose in a case where there was to be an itemized ver­dict/apportionment of damages, had poten­tial only for doing harm, and that the question before the jury was not "sole proxi­mate cause" but "proximate cause" were well taken.  A court may proper­ly grant a new trial to correct mis­leading instruc­tions, consid­ering the fair­ness of the trial to all parties and whether substantial justice was accom­plished, even if neither party objected to those in­struc­tions.  
Smith v. City of Evanston, 
260 Ill. App. 3d 925, 933, 631 N.E.2d 1269, 1275-76 (1994).

Defendants cite 
Chalmers, 
where the jury arguably wrote its disability and pain and suffering verdict on the line for puni­tive damages.  The court held that if there was an error, it should have been discovered prior to the jury's dis­charge, at which point the trial judge could have taken such action as might have been appropriate.  
Chalmers, 
88 Ill. 2d at 540-41, 431 N.E.2d at 365.  The error there was in the verdict form, not the special interrogatory.  It is not clear what action a trial court can take when it believes the jury was confused in answering a special interrogatory.  Under the cases cited above, the court could not tell the jury that the special interrogatory had to be answered consistently with the general verdict.  Perhaps the only thing the trial court could have done was to send the jurors back and ask them to think about it some more.  That would not have been productive, given the confusing nature of the interrogatory.

Accordingly, we affirm the judgment of the circuit court granting a new trial and remand; we reverse the judgment  dismissing the case and remand for consid­eration of a sanc­tion other than dismissal.

Affirmed in part and reversed in part; cause remanded with directions.

McCULLOUGH and MYERSCOUGH, JJ., concur.